Harold William **ABBOTT** et al.

v.

**UNITED STATES.**

Cong. No. 5-57.

United States Court of Claims.
July 13, 1959.

David W. Palmer, Destin, Fla., for plaintiffs.

June A. Murray, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland and Philip R. Miller, Washington, D. C., on the brief, for defendant.

MADDEN, Judge.

This case is before us pursuant to House Resolution No. 323, August 22, 1957, 85th Cong., 1st Sess., referring to this court a bill, H.R. 8758. Such a reference is authorized by sections 1492 and 2509 of Title 28 of the United States Code.

The question is whether the plaintiffs, operators of fishing boats on the coast of Florida, should have been required to pay a Federal transportation tax upon the amounts which they collected from their customers when they took them on fishing excursions, or when they chartered boats to customers for fishing.

Section 3469 of Title 26 U.S.C., which imposed a tax upon charges for the transportation of persons by rail, motor vehicle, water or air, became a law on September 20, 1941. No attempt was made to apply the law to fishing operations, at least in the Florida area, until about 1946, and its application from 1946 to 1949 was sporadic in nature. About 1949 or 1950 an attempt was made by the taxing authorities to apply the law rather generally, and to the plaintiffs in this proceeding. Section 3469 of Title 26, U.S. C., was amended, effective November 1, 1951, 65 Stat. 538, to expressly exempt from the transportation tax boat transportation for fishing purposes. In a suit, Smith v. United States, D.C., 110 F. Supp. 892, to test the question whether the section, before its amendment, had been applicable, the United States District Court for the Northern District of Florida decided, on March 31, 1953, that the fishing operation in that case was not subject to the transportation tax. The United States did not appeal from that decision and does not now contend that the tax is or was applicable to fishing operations such as those in which the plaintiffs were engaged. Taxes had, however, been collected from the plaintiffs and other fishing boat operators. Some of these taxes were refunded by the Bureau of Internal Revenue. In other cases refunds were refused, on the grounds that timely claims for refund had not been filed, or that timely suits had not been brought or that the taxpayers had not borne the economic burden of the tax, but had passed it on to their fishing customers.

The House Resolution referring H.R. 8758 to this court requests the court to make a report:

"sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and

the amount, if any, legally or equitably owing by the United States to the claimants, *the statute of limitations to the contrary notwithstanding.*" (Italics supplied.)

We gather from the italicized words that the House of Representatives does not desire information or conclusions as to whether these taxpayers filed claims for refund within the period fixed by the statutes for such filing, or brought this suit within the period prescribed by law.

Several suits on the claims here involved were filed in the United States District Courts in Florida. In one of them, the plaintiff, on appeal, obtained a judgment for a part of his claim. Davis v. United States, 5 Cir., 235 F.2d 174. In another, which on appeal appears as United States v. Knowles, 5 Cir., 235 F.2d 177, the plaintiff obtained a judgment in the District Court, but after appeal and remand her suit was dismissed. In those cases in which there were judicial decisions that the plaintiffs had not borne the economic burden of the tax, we have not undertaken to review the correctness of those decisions. Where the judicial decisions were based only on failure to file a timely claim or a timely suit, we advise the Congress as to the amount legally or equitably due the plaintiffs, without regard to the question of limitations.

The principal factual question with regard to the several plaintiffs is whether, or to what extent, they bore the economic burden of the tax. In our findings of fact we treat each plaintiff separately and give our conclusions as to the validity of his claims.

In the case of the plaintiff Abbott, discussed in finding 7, the fishing operation during a part of the period in question was carried on by Abbott in partnership with one Hendrickson, who is not a party to this proceeding. We therefore report that the plaintiff Abbott is, apart from the question of the statute of limitations, entitled to one-half the transportation taxes paid by the partnership during this period, and the amount stated in the tabulation which follows includes only that one-half.

Apart from the question of the statutes of limitations, the plaintiffs would be legally entitled to recover the following amounts from the United States.

| | |
|---|---|
| Harold William Abbott (1) | $1,486.43 |
| Max Anderson (2) | 7,071.85 |
| J. E. Brunson (3) | None |
| Otto P. Hahn (4) | 359.96 |
| Paul R. Hahn (5) | 404.60 |
| Howard P. Holt (6) | 6,845.25 |
| Jack L. Knowles, Jr. (7) | None |
| Arnold Loher (8) | 653.69 |
| Harold Lyman (9) | 1,431.27 |
| A. D. Smirch, Trading as Mayport Seafoods (10) | 2,025.60 |
| George W. Davis (11) | 1,190.71 |
| Mary Alma Knowles (12) | 1,160.48 |
| Jack (John) H. Whiticar, Trading as the Whiticar Fleet (13) | 687.77 |

---

The foregoing opinion and the findings of fact which follow will be certified to the Congress pursuant to House Resolution No. 323, 85th Cong., 1st Sess.

DANAHER, Circuit Judge, sitting by designation; JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.

Findings of Fact

The court, having considered the evidence, the report of Trial Commissioner Richard H. Akers, and the briefs and

argument of counsel, makes findings of fact as follows:

1. This proceeding involves a group of plaintiffs, each of whom operated a boat or boats for fishing in the coastal waters of Florida. These boats were operated both on a charter basis and also by a charge of individual fares for parties who desired to engage in fishing.

2. Section 3469 of Title 26 U.S.C.A., which imposed a tax for the transportation of persons by rail, motor vehicle, water or air, became a law September 20, 1941. Apparently the Bureau of Internal Revenue made no effort to apply that section in the Florida area to fishing operations similar to those carried on by the plaintiffs in this proceeding until about 1946, and its application from 1946 to 1949 was at least sporadic in nature. However, about 1949 or 1950, it sought to make the section applicable in a rather general manner to fishing operators in Florida, including the plaintiffs in this proceeding.

3. As a result of that application by the Bureau of Internal Revenue, an action was instituted in the United States District Court for the Northern District of Florida which was decided on March 31, 1953, entitled Smith v. United States, D.C., 110 F.Supp. 892. That case involved a plaintiff who operated a fishing boat for charter during 1951 and charged the sum of $30 for five hours or less, irrespective of the number of persons up to eight in the party embarking on a fishing trip on the boat, and $5 per hour for each additional hour. The court held that an operation of that character was not transportation upon which a tax might be imposed under the provisions of section 3469 and entered judgment in favor of that plaintiff. The United States did not appeal from that decision and does not now contend that the tax is applicable to operations of the character involved in that proceeding or to persons similarly situated, including the plaintiffs herein involved.

4. After the decision in the Smith case, the question arose as to the best procedure to be followed for the protection of the claims of other fishermen similarly situated while their cases were being processed through the Bureau of Internal Revenue. Shortly after the decision in the Smith case and before that decision became final, namely, on June 3, 1953, an action was filed in the same court in the name of Gibson v. United States, and on August 14, 1953, that plaintiff filed a motion seeking to have made parties-plaintiff various other named persons similarly situated. When the matter came on for hearing before the court, counsel for the respective parties were advised that the motion would be denied but the entry of an order denying the same would be delayed until counsel for the parties notified the court that the claims of those seeking to intervene had been processed with the Bureau of Internal Revenue to a point where suit could be filed, if necessary. By July 1, 1954, the Bureau of Internal Revenue had paid some of the claims of the various parties involved but had declined to pay others, and counsel for the parties advised the court at that time that it was appropriate for the court to enter its order on the plaintiff's motion for the joinder of other parties-plaintiff in the Gibson case, which action the court took on that day denying such motion. On April 7, 1955, the court decided that plaintiff Gibson was entitled to recover and entered judgment in his favor. Gibson v. United States, D.C., 137 F.Supp. 296.

5. In the meantime and thereafter, various suits were instituted to recover in cases where the Bureau of Internal Revenue refused to refund the taxes which had been paid. In some instances the parties were successful, and in others unsuccessful. Since the Government was no longer contending for the applicability of section 3469, supra, in general the question of the taxability of the fares received by these parties was not involved. In most cases, the principal questions involved were the statute of limitations, and whether these parties had borne the economic burden of the tax which they had paid and had not passed

it on to the parties who paid for use of their boats. The limitations matter included such questions as whether timely claims for refund had been filed, whether suits had been timely instituted after rejection of the claims, and other similar questions. As will hereinafter appear, at least two of the plaintiffs in this proceeding, George W. Davis and Mary Alma Knowles, instituted suits in the District Court, on which suits determinations were not only had by the District Court but also by the Court of Appeals.

Section 3469, supra, was amended on October 20, 1951, effective November 1, 1951, to exempt from tax boat transportation which was used for fishing purposes.

6. As a result of the failure of the plaintiffs to secure refunds from the Bureau of Internal Revenue or judgments on account of suits instituted in the District Courts, H.R. 8758 was introduced in the United States House of Representatives on July 16, 1957, entitled "A bill for the relief of Harold William Abbott and others", which individuals are the plaintiffs in this proceeding. On August 22, 1957, the House of Representatives adopted H.Res. 323 referring the aforementioned H.R. 8758 to this court. That resolution read as follows:

"*Resolved*, That the bill, H.R. 8758, entitled 'A bill for the relief of Harold William Abbott and others', together with all accompanying papers, is hereby referred to the United States Court of Claims pursuant to sections 1492 and 2509 of title 28, United States Code; and said court shall proceed expeditiously with the same in accordance with the provisions of said sections, and report to the House of Representatives at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably owing by the United States to the claimants,

the statute of limitations to the contrary notwithstanding."

### Harold William Abbott (1)

7. (a) Plaintiff, Harold William Abbott, has been operating fishing boats for approximately twenty-five years, including operations in the Miami area during the period October 1946 to January 1950. From October 1946 to July 1948 of the period just mentioned, plaintiff carried on his fishing operations in partnership with one James G. Hendrickson. While each had a half interest in the partnership, plaintiff was the managing director of the enterprise and Hendrickson was the silent partner.

(b) During the partnership period, plaintiff, as managing director, paid transportation taxes on behalf of the partnership in the total amount of $1,064.95. About July 1948, plaintiff acquired Hendrickson's interest in the partnership and thereafter conducted the business in his individual capacity. While so operating in this latter capacity, he paid transportation taxes for the period July 1948 to January 1950 in the total amount of $953.95.

(c) In the case of this plaintiff as well as of the other plaintiffs, unless otherwise indicated, the transportation tax involved was paid monthly and during the month following that for which it was due.

(d) Plaintiff neither individually nor acting for the partnership increased his fares in order to collect the tax from his customers. He paid the tax from his own funds and did not pass it on to his customers.

(e) On October 3, 1955, plaintiff, through his attorney, filed a claim for refund of the transportation taxes paid for the period 1946 to November 1951 in an estimated amount of $3,500. No reference was made therein to the fact that during a part of that period plaintiff was operating as a partnership with Hendrickson, as indicated above, and no claim has ever been filed by the partnership or by Hendrickson.

### Max Anderson (2)

8. (a) Plaintiff, Max Anderson, operated fishing boats for hire at or near Sarasota and Panama City, Florida. He was associated in this operation with his father and brothers under the name of "C. S. Anderson and Sons, Deep Sea Fishing", with some kind of an arrangement whereby expenses were pooled but each individual operated independently and each paid his own taxes. During the period 1946 to 1951, he paid transportation taxes on account of such operation monthly (with minor exceptions) beginning June 1946 and ending October 1951 in total annual amounts as follows:

| | |
|---|---|
| 1946 ................ $ 535.80 | 1950 ................ $1,667.92 |
| 1947 ................ 928.23 | 1951 ................ 3,465.87 |
| 1948 ................ 1,218.04 | |
| 1949 ................ 1,702.36 | Total ............ 9,518.22 |

(b) The last five payments for 1951 were for the months of June, July, August, September, and October, in the respective amounts of $652.40, $646.42, $780.00, $332.10, and $35.45, which amounts were paid in the respective months following those for which the taxes were paid. On August 1, 1955, plaintiff, through his authorized representative filed a claim for refund in the estimated amount of $6,647.00 on account of taxes paid during the period just mentioned. The Internal Revenue Service gave notice on July 27, 1956, of the rejection of that claim. Prior to that time, namely, December 4, 1950, the present representative of plaintiff filed a group claim for refund in the names of C. S. Anderson and Sons, George W. Davis, Lambert M. Anderson, Virgil Anderson, and S. W. Anderson, such claim purporting to be for the period 1946 to 1948 in the total amount of $4,039.83. The evidence does not satisfactorily establish that this plaintiff was a party to that claim either individually or through the name of C. S. Anderson and Sons.

(c) Prior to June 1951, plaintiff did not increase his fares in order to collect transportation tax from his customers. He paid the tax from his own funds, all or a substantial part of which came from the fares collected from his customers. He did not pass the tax on to his customers. For the period June to October 1951, he increased his fares to cover the transportation tax and thus for those months passed the tax on to his customers.

### J. E. Brunson (3)

9. (a) During the period 1948 to 1951, inclusive, plaintiff, J. E. Brunson, was engaged in operating fishing boats at or near Destin, Florida. During that period, he paid transportation taxes monthly for the months he operated in the following total annual amounts:

| | |
|---|---|
| 1948 ...................... $ 30.10 |
| 1949 ...................... 11.90 |
| 1950 ...................... 71.40 |
| 1951 ...................... 116.80 |
| Total ...................... 230.20 |

(b) The payments for 1950 and 1951 were for the months of May and August 1950 and for the months of June, July, and August 1951, in the respective amounts of $18.20, $53.20, $41.90, $42.35, and $32.55, which amounts were paid in the respective months following those for which the tax was paid. On October 11, 1954, a claim for refund signed by his attorney of record was filed on behalf of this plaintiff, seeking recovery of transportation taxes in the estimated amount of $250.00 for the period from 1947 to 1951.

(c) Plaintiff did not appear as a witness in this proceeding and no satisfactory evidence was presented as to whether he bore the economic burden of this tax or whether he passed it on to his customers.

## Otto P. Hahn (4)

10. (a) Plaintiff, Otto P. Hahn, has been in the fishing business for approximately thirty-seven years and at least from about 1942 to 1951 operated a fishing boat at or near Mayport, Florida. From January 2, 1947, to September 1951, inclusive, he paid transportation taxes on account of his fishing boat operations in the total amount of $1,206.26. Of that amount, $359.96 was paid on January 2, 1947, on account of operations from about 1942 or 1943 to January 2, 1947. On this latter date, January 2, 1947, the district collector called the matter of transportation taxes on fishing boat operations to plaintiff's attention and computed the amount which he considered due for the prior period, that is, $359.96. Plaintiff indicated that he had not been aware of his liability for such taxes and immediately made payment of the amount demanded.

(b) Immediately upon making the payment just mentioned, plaintiff increased his charter price from $15 to $20. At that time his charter rate had not been increased for several years, during which time expenses had been increasing. The increase was made to cover these increased expenses and also the transportation taxes which he expected to pay and did pay over the succeeding monthly periods of operation through September 1951 in the total amount of $846.30. In his cards and posters advertising his service, he stated that the transportation tax was included in the amount charged. The last three payments for 1951 were for the months of July, August, and September, in the respective amounts of $41.85, $38.70, and $15.05, and these amounts were paid on August 27, October 1, and November 1, 1951, respectively.

(c) On August 15, 1955, a claim for refund signed by his authorized representative was filed on behalf of plaintiff on account of the transportation taxes which he paid from 1946 to 1951, inclusive.

## Paul R. Hahn (5)

11. (a) Plaintiff, Paul R. Hahn, operated a fishing boat at or near Mayport, Florida, during the summer season. During the periods May to September 1950 and 1951, he paid transportation taxes in the total amount of $404.60 on account of such operations. The last three payments for 1951 were for the months of July, August, and September, in the respective amounts of $63.75, $67.50, and $15.00, and these amounts were paid on August 22, October 1, and November 1, 1951, respectively. While he represented in his cards and posters that the transportation tax was included in the charge which he made to his customers, he did not increase the charge to his customers after he began paying the transportation tax and he did not pass such tax along to his customers.

(b) On August 15, 1955, plaintiff's authorized attorney filed a claim for refund on account of the transportation taxes which had been paid as set out above.

## Howard P. Holt (6)

12. (a) Plaintiff, Howard P. Holt, has been the operator of a fishing boat in the Miami Beach area since 1947 and paid the transportation taxes on account of such operations for the period February 1947 to October 1951, inclusive, in the following total annual amounts:

| | |
|---|---|
| 1947 | $ 548.40 |
| 1948 | 1,102.20 |
| 1949 | 1,303.25 |
| 1950 | 1,995.30 |
| 1951 | 1,896.10 |
| Total | 6,845.25 |

(b) The last four payments for 1951 were for the months of July, August, September, and October, in the respective amounts of $290.70, $231.45, $115.00, and $120.15, which amounts were paid in the respective months following those for which the taxes were paid. The foregoing amount for July was paid August 3, 1951. On August 16, 1955, a claim for refund signed by his authorized repre-

sentative was filed on behalf of his plaintiff on account of the taxes paid as set out above.

(c) Plaintiff acquired a fishing boat in 1946 and some months prior to the beginning of his operations in 1947 he inquired of competitors in his area of the fees which were being charged to customers on boats in that area and the transportation tax that was being paid. He ascertained that some were paying no tax at all whereas others were paying 15 percent on the portion of the charge they considered represented transportation. He obtained brochures of two operators who were charging $3 per person for a given fishing trip and ascertained that these individuals considered that $1 of the charge was applicable to transportation, on which a tax of 15 percent was being paid, that is, 15 cents, and the balance of the fee was considered as an amount for the privilege of fishing and not subject to the tax. Upon inquiry at the office of the internal revenue collector, he was advised that an allocation of the character just mentioned would be satisfactory pending further advice from that office, which was never received. He accordingly fixed a charge of $3 per person and prepared a circular showing that it included bait, lines, tackle, tax, and transportation from and to a hotel in the area. He maintained the same charge throughout the period involved and made no change when the statutory provision was amended on October 20, 1951. There was nothing in the advertising circular to indicate the amount of tax included in the $3 charge and no separate tax was collected from his customers. The tax was paid from his general funds which were derived from these fishing operations in the manner just described.

### Jack L. Knowles, Jr. (7)

13. (a) Plaintiff, Jack L. Knowles, Jr., was engaged in the operation of a fishing boat from 1946 to 1951 in the area of Panama City, Florida, during which time he paid transportation taxes in total annual amounts as follows:

| | |
|---|---|
| 1946 | $ 265.80 |
| 1947 | 273.27 |
| 1948 | 22.50 |
| 1951 | 1,458.43 |
| Total | 2,020.00 |

(b) During the period from July 1948 through October 1950, assessments of $611.95 were made for which payment was resisted. On February 5, 1951, a warrant of distraint was issued and on April 19, 1951, a lien was filed against him. The assessment of $611.95 together with lien fees, penalties and interest, was paid during the period from June 4 to August 13, 1951, in addition to other current assessments. The last payment for 1951 was for August in the amount of $122.60 which was paid September 27, 1951.

(c) A claim for refund signed by his authorized attorney was filed on behalf of this plaintiff on September 26, 1955, for the recovery of the taxes paid as indicated above. This plaintiff did not appear as a witness in these proceedings and no satisfactory evidence was offered as to whether or not he passed the tax on to his customers or whether he bore the economic burden thereof.

### Arnold Loher (8)

14. (a) Plaintiff, Arnold Loher, has been operating a fishing boat in the St. Petersburg area for approximately twenty-four years. About March 1950 a revenue agent advised him that the transportation tax was applicable to his operation not only at that time but also had been for several years prior thereto. The agent suggested that while taxes were due for prior years, it would be satisfactory if he would begin collecting the tax at that time and continue it on his future operations and that it would not be necessary to consider the operation for the prior years. The plaintiff at first undertook to collect the tax as an addition to the regular fee he was charging a customer for a trip but he met with such violent opposition from his customers from whom he collected the tax in

addition to the regular fee that after three attempts he made no further effort to collect the tax by an increase of his regular charge. Instead he collected the regular charge and paid the tax out of the funds so collected. The total amount of tax collected from his customers on the three occasions referred to was approximately $20.

(b) During the period March 1950 to September 1951, this plaintiff paid transportation taxes in the total amount of $673.69, the last amount of $4.50, for September 1951, being paid October 5, 1951. He filed a claim for refund on October 17, 1955, for the amount paid, which claim was rejected March 14, 1956.

### Harold Lyman (9)

15. (a) Plaintiff, Harold Lyman, has been operating fishing boats at Boynton Beach, Florida, since 1937. Prior to 1947, he had not paid any transportation tax on account of his operation. However, the Internal Revenue Service made an assessment in the sum of $197.40 for the period January through March 1947, and a further assessment of $167.32 for the period April 1948 through January 1949, which amounts the plaintiff paid in 1949 together with interest and penalties of $47.09. Commencing in March 1949, for February 1949, the plaintiff paid transportation taxes monthly through October 1951. The total annual amount of transportation taxes so paid by the plaintiff, including amounts paid in 1949 for 1947 and 1948, was as follows:

| | |
|---|---:|
| 1949 | $ 617.19 |
| 1950 | 628.64 |
| 1951 | 385.44 |
| Total | 1,631.27 |

(b) The last two payments for 1951 were for August and October in the respective amounts of $9.00 and $1.35, which were paid on October 1 and November 19, 1951. A claim for the refund of the taxes paid, as set out above, was filed on behalf of plaintiff by his attorney of record on October 27, 1955. That claim was rejected by the Internal Revenue Service July 23, 1956.

(c) When plaintiff was advised that the transportation tax was applicable to his operations, he sought to collect a tax of $1.88 on the $25 charge for a fishing trip with his boat, which was the tax the Internal Revenue Service had indicated was satisfactory. However, he met with such strong opposition from his customers to the collection of the tax that, after having collected approximately $200 in that way, he thereafter charged the regular fare of $25 without any tax added and paid the tax out of the funds which he received from his fishing operations.

### A. D. Smirch, Trading as Mayport Seafoods (10)

16. (a) Plaintiff, A. D. Smirch, has been engaged in the operation of a fishing boat at Mayport, Florida, since about 1944. Sometime in 1949, he was advised by the Internal Revenue Service there was a transportation tax of 60 cents due on the fare of $5.50 which he was charging his customers, and thereafter, during the period from May 1949 to September 1951, inclusive, he paid the tax monthly in total annual amounts as follows:

| | |
|---|---:|
| 1949 | $ 359.40 |
| 1950 | 514.20 |
| 1951 | 1,152.00 |
| Total | 2,025.60 |

(b) The last payments for 1951 were for the months of May, June, July, August, and September, in the respective amounts of $98.40, $223.20, $386.40, $298.20, and $42.00, and they were paid in the respective months following those for which the tax was paid. The foregoing amount for May was paid June 26, 1951. Two claims for refund were filed on account of those payments: the first, signed by his attorney, was filed June 3, 1955; and the second, signed by the plaintiff, was filed on July 25, 1955.

(c) When the plaintiff first learned of the demand that he should pay this tax,

he increased his regular charge to a customer from $5.50 to $5.60, but because of the objection to that increase he continued it for only a short time. He thereafter charged the regular fare and paid the tax out of the funds received from the regular fares. The amount collected on account of the increase of 10 cents was negligible.

## George W. Davis (11)

17. (a) Plaintiff, George W. Davis, operated fishing boats for hire in the Florida area and during the period April 1947 to October 1951, inclusive, paid transportation taxes on account of such operation. In February 1952, the Commissioner of Internal Revenue made a partial allowance on a claim for refund which reduced the net amount paid by him for that period to $3,713.45.

(b) The plaintiff thereafter filed suit in the United States District Court for the Northern District of Florida, which court held that he was not entitled to recover any of the amount sued for because he had collected the tax from his customers. On appeal (Davis v. United States, 5 Cir., 235 F.2d 174), it was held that $1,190.71 was barred by the lack of a timely claim for refund for payments made in 1947, 1948, and 1949, that $686.-88 was barred because collected by the plaintiff from his customers in 1951, and that $1,833.86 was recoverable by the plaintiff as having been paid by him in 1950 during the period covered by his claim for refund and not collected from his customers. On rehearing the amount recoverable was increased to $1,837.15, for which judgment was duly entered.

(c) On March 9, 1957, the plaintiff filed a second appeal which was dismissed on May 17, 1957, and rehearing denied June 26, 1957.

(d) The defendant agrees that except for the bar of the statute of limitations this plaintiff would be entitled to recover $1,190.71 as determined in the aforementioned decision.

| | |
|---|---|
| 1946 | $220.50 |
| 1947 | 106.50 |
| 1948 | 86.06 |
| 1949 | 108.42 |

## Mary Alma Knowles (12)

18. (a) Plaintiff, Mary Alma Knowles, was engaged in fishing boat operations in the Florida area, and during the period 1946 to 1951, inclusive, paid transportation taxes on account of such operations in the total amount of $4,981.-67. In her initial suit in the United States District Court for the recovery of these taxes, judgment was rendered in favor of plaintiff for the full amount (55-2 USTC, par. 49,148). However, on appeal, that decision was reversed in part (United States v. Knowles, 5 Cir., 235 F.2d 177), the court holding that as to $1,160.48 the statute of limitations precluded its recovery and that as to the balance, $3,821.19, a new trial should be had to determine whether that plaintiff had borne the economic burden of the tax. On remand, in a decision rendered September 19, 1957, D.C., 155 F.Supp. 678, the District Court held that the plaintiff had not borne the economic burden of the tax and accordingly dismissed the suit. An appeal from that decision was dismissed by the United States Circuit Court of Appeals for the Fifth Circuit on October 31, 1958, as not having been timely taken, 260 F.2d 852.

(b) The defendant concedes that except for the bar of the statute of limitations the plaintiff is entitled to recover transportation taxes in the total amount of $1,160.48.

## Jack (John) H. Whiticar, Trading As the Whiticar Fleet (13)

19. (a) Plaintiff, Jack (John) H. Whiticar, has been engaged in the charter boat fishing business out of Stuart, Florida, since 1937. Commencing in January 1946 and continuing into June 1951, this plaintiff paid transportation taxes monthly in the following total annual amounts:

| | |
|---|---|
| 1950 | $ 77.33 |
| 1951 | 88.96 |
| Total | 687.77 |

(b) On September 26, 1957, a claim for refund signed by his authorized attorney was filed on behalf of this plaintiff for the recovery of the taxes paid as set out above.

(c) While this plaintiff increased the charge to his customers on one or two occasions during the period while he was paying the transportation taxes set out above, these increases were not on account of the transportation taxes but rather on account of other increased expenses. Throughout the period, the fee charged his customers included the transportation tax and he did not undertake to pass the tax along to his customers.