**CACTUS HEIGHTS COUNTRY CLUB,**
a corporation, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. 65–107S.**

United States District Court
D. South Dakota, S. D.

Dec. 13, 1967.

James E. Moore of Dana, Golden, Moore & Rasmussen, and Kenneth C. Hanson, Sioux Falls, S. D., for plaintiff.

Daniel J. Dinan, Dept. of Justice, Washington, D. C., and Gene R. Bushnell, Asst. U. S. Atty., Sioux Falls, S. D., for defendant.

NICHOL, Chief Judge.

This is an action pursuant to 28 U.S.C.A. Section 1346(a) (1) for a refund of excise taxes paid for the third quarter of 1960. The government had also assessed plaintiff for the second and fourth quarters of 1960, for all four quarters of 1961 and for the first and second quarters of 1962. These additional taxes have not been paid. Plaintiff, pursuant to normal procedure, paid one quarter and now sues for refund to have determined, if any, the liability involved. The government in turn counterclaimed for the other eight quarters, such claim being by admission predicated on the court's jurisdiction to decide the original refund claim.

Prior to the time of trial, the defendant moved to dismiss the complaint for the reason that plaintiff did not allege that it had received the consent of the club members to file the action or that it had refunded the taxes collected from such members, one of which was necessary for this court to hear the plaintiff's claim. See 26 U.S.C.A. (I.R.C.1954) Sec. 6415. This motion was denied.

At the commencement of the trial, defendant renewed the motion to dismiss and testimony was offered in support thereof. At the conclusion of this testimony, the court reserved its ruling on the issue, and additional evidence was heard on the merits of the case.

At the conclusion of the trial, it was agreed by both parties that simultaneous briefs would be submitted on all issues concerned.

Cactus Heights Country Club was incorporated in the state of South Dakota

on August 25, 1958. The three incorporators were Merton H. Peterson, John E. Moore, Jr., and Thomas B. Searls. Messrs. Moore and Searls relinquished their interests in the corporation in November of 1958 and since that time Mr. Peterson and his wife have been the principal shareholders.

The corporation was formed to operate and maintain a golf course and country club, to provide entertainment for hire and profit, and to maintain any and all "allied businesses" connected therewith.

Sometime during the summer of 1959, a Mr. Mark Marker was hired by the corporation as manager of the country club. He and Mr. Peterson soon thereafter began to solicit membership. Several persons joined in October of 1959 and others became associated later in that year and throughout 1960, 1961 and 1962.

It appears as though the public was somewhat apprehensive about the future success of Cactus Heights Country Club and, therefore, solicitation of new members proved somewhat difficult. Many of the members took it upon themselves to conduct membership campaigns. Several committees were formed among the existing members, the functions of which, though, were to be purely of an advisory nature. As indicated, the management of the internal affairs of the corporation was in private hands.

During the fall of 1958 work was commenced on the golf course but it was not completed until sometime in 1959. In September of 1959 the clubhouse was started and was completed in 1960. Tennis courts were completed in 1961, as was a guest house with motel accommodations. In addition to this, expenditures were made for such things as furniture, fixtures and equipment, a well and an irrigation system. The amounts which had been expended by the corporation for some of these installations at times relative to the periods involved here are as follows:

| Improvements | Amount expended as of | | |
| --- | --- | --- | --- |
| | Dec. 31, 1960 | Dec. 31, 1961 | Dec. 31, 1962 |
| Bldg. & fix. | $202,512.69 | $267,251.86 | $269,003.85 |
| Swimming pool | 12,502.50 | 12,552.50 | 12,552.50 |
| Irrig. system | 11,000.00 | 17,160.42 | 24,792.14 |
| Well | 2,485.00 | 3,985.00 | 3,985.00 |
| Equipment | 95,115.87 | 109,932.95 | 116,572.34 |
| Tennis court | . . . . . . . | 6,000.00 | 8,573.76 |

The total amount collected in dues and membership fees as of June 30, 1962, was $188,092.41.

During the periods in question Cactus Heights Country Club maintained an account in three different banks. Amounts billed to members for ordinary expenses of the club were included on the same statement as charges for dues and membership fees. When a remittance was received it was most often in one check and was deposited in one account, there being no segregation of funds as to their nature. Separate receipts, however, were kept in the member's individual folder which indicated the amounts paid as dues and membership fees as of a given date.

This case concerns, primarily, the application and interpretation of two sections of the Internal Revenue Code which read, in part, as follows:

Sec. 4241. Imposition of Tax

(a) *Rate.*—There is hereby imposed—

(1) *Dues or membership fees.*—A tax equivalent to 20 percent of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

\* \* \* \*

(b) *By whom paid.*—Except as otherwise provided in Section 4243(b), the taxes imposed by this section shall be paid by the person paying such dues or fees, or holding such life membership.

Sec. 4243. Exemptions

\* \* \* \*

(b) *Assessment for Capital Improvements.*—Notwithstanding any other provision of this part, there shall be exempted from the provisions of Section 4241 any *assessment* paid for the construction or reconstruction of any social, athletic or sporting facility (or for the construction or reconstruction of any capital addition to, or capital improvement of, any such facility). (Emphasis added).

Section 4243(b) was a part of the Excise Tax Technical Changes Act of 1958 (Section 132 thereof). It was amended by Section 3 of the Excise Tax Technical Changes Act of 1959 to read as follows:

(b) *Payments for capital improvements.*—Notwithstanding any other provisions of this part, there shall be exempted from the provisions of Section 4241 any amount paid as *dues or membership fees* or as initiation fees— (1) for the construction or reconstruction of any social, athletic or sporting facility, or (2) for the construction or reconstruction of any capital improvement of, any such facility, or (3) for furnishings or fixtures (Including installation charges) for any such facility, to the extent that such furnishings or fixtures are required by reason of the construction or reconstruction described in paragraph (1) or (2), for the use of such facility upon completion of such construction or reconstruction; except that, in the case of any such amount which is not expended for such construction, reconstruction, furnishings or fixtures (including installation charges) within three years after the day of payment of such amount, the exemption provided by this subsection shall cease to apply upon the expiration of such three-year period, and the club or organization, rather than the person who made such payment, shall be liable for any tax imposed by Section 4241 in respect of such payment, as if such payment had been made on the first day following the expiration of such three-year period. (Emphasis added).

Both Sections 4241 and 4243 have since been repealed. See Pub.Law 89–44, 79 Stat. 145 (1965).

■ This court will first consider the claim for refund which, as indicated earlier, involves the third quarter of 1960. In considering the questions presented here, the court is mindful that tax exemptions do not and should not turn upon general equitable considerations, but depend upon legislative grace. Luehrmann's Estate v. C. I. R., 287 F.2d 10 (8th Cir. 1961).

■ There would appear to be no question but that Cactus Heights Country Club is the type of organization Congress had in mind when the statute imposing the excise, Section 4241, was enacted. This is true even though Cactus Heights is a profit making organization and its members have no proprietary interests therein. Epstein v. United States, 357 F.2d 928, 174 Ct.Cl. 1158 (1966). Correspondingly, however, this organization must also be within the purview of those contemplated by Section 4243(b) which provides the exemption. To hold that Cactus Heights Country Club is a "social, athletic, or sporting club or organization" for the purposes of the tax under 4241 but not for the purposes of the exemption under 4243(b) would be to sustain a position too inconsistent for this or any court to follow.

That the amounts paid as dues and membership fees during all periods involved here were in fact expended for capital improvements and for furnishings and fixtures for such improvements is without serious doubt. This was a new country club and obviously capital improvements were being undertaken in abundance. The foregoing summary of capital expenditures is quite indicative

of the extensiveness of the project. Furthermore, Mr. Peterson testified that much more than the amounts taken in as fees and dues were expended for capital improvements. He stated that in 1960 an estimated $150,000 in additional funds were borrowed to finance these undertakings. The government has challenged some of these assertions and points out that the ledger for the account in the Sioux Valley Bank (designated as the "operating account") reveals that no expenditures were made for capital improvements. However, it would seem that the time for making the expenditures is not limited only to this particular quarter, and it should be noted that an examination of the ledgers for the other two accounts indicates that such expenditures were, in fact, so made.

■ The government cites Revenue Ruling 63–215 which, among other things, indicates that in order for the exemption to apply, it is necessary that prior to the time of payment "proper action must have been taken by the club members or by the board of directors of the club to establish a definite project of construction or reconstruction. * * " This ruling became effective sometime during the year 1963 and without alluding to its validity, this court simply feels that, at most, it is entitled to prospective application, there being no "surrounding circumstances plainly indicating the contrary." Larkin v. United States, 78 F.2d 951, 955 (8 Cir. 1935). As such, it cannot be applicable to any matter involved in this suit.

■ Enough has been said to sustain plaintiff's claim for refund in the full amount were it not for one further question raised by the government. As noted earlier, it is contended that this court has no jurisdiction to hear plaintiff's claim since no allegation has been made nor has it been shown that Cactus Heights Country Club "repaid the amount of such tax" to the persons from whom it was collected, or obtained the consent of such persons "to the allowance of such credit or refund." 26 U.S.C.A. (I.R.C.1954) Sec. 6415. It is well recognized that without such proof plaintiff has no standing to bring this suit. McGowan v. United States, 296 F.2d 252 (5th Cir. 1961); Gumpert v. United States, 296 F.2d 927, 155 Ct.Cl. 721 (1961). This all assumes, of course, that it was not Cactus Heights which bore the economic burden of the tax in the first instance. See McGowan v. United States and Gumpert v. United States, supra.

During a part of 1959, Cactus Heights Country Club was using a membership application form which indicated that members would be charged $180.00 for a complete family membership certificate and $120.00 as regular annual dues. To both charges there would be added an additional 20 per cent as Federal excise tax. The application form was so noted at the bottom. The total costs were thus $216.00 and $144.00, respectively, for members joining under this application, which was used as late as the latter part of October, 1959. Sometime later, but prior to December 19, 1959, Mr. Peterson became aware of the exemption provided for by the Excise Tax Technical Changes Act of 1958. He consulted with an attorney, Mr. Kenneth Hanson, who advised him that the exemption would probably only apply to dues and not membership fees. Apparently Mr. Hanson was not aware of the 1959 amendment at this time. A new application form was prepared which, upon examination at the trial, Mr. Hanson stated was a product of his conversation with Mr. Peterson. This application was in use as early as December 19, 1959. When Mr. Hanson learned that the 1959 amendment specifically exempted membership fees, he so informed Mr. Peterson, but the application form apparently was not again changed to reflect this, at least not until a considerable time later.

The application form adopted as a result of the first discussion with Mr. Hanson indicated $216.00 as the price of the complete family membership certificate and $144.00 as regular annual dues. These two amounts were identical with those charged under the original appli-

cation form once the 20 per cent excise tax had been included. On the new form no reference was made to the fact that any excise tax would be added. Beside the amount charged as membership fees, however, was an asterisk which by way of explanation at the bottom indicated that this cost included "all applicable taxes." No such notation was made for the charge as annual dues. This application form was presumably in use during the period in question, and at all times pertinent hereto the members were apparently under the impression they were paying excise taxes even though most of them who testified had heard some talk around the clubhouse concerning an exemption. No taxes were ever refunded to the members nor was any consent ever obtained for plaintiff to maintain this refund claim.

■ Based upon the foregoing, the following conclusions seem inescapable:

(1) that under the original application form, plaintiff, Cactus Heights Country Club, was collecting a 20 per cent excise tax on both fees and dues from its members;

(2) that as a result of learning of an exemption and a conversation with an attorney, a new application form was prepared which no longer charged any excise tax with regard to dues but continued to so collect the tax on membership fees (See Epstein v. United States, supra);

(3) that no tax at any time was ever refunded, that no consent was ever obtained, and that it was not Cactus Heights Country Club which bore the economic burden of this tax; and, therefore,

(4) that because of the clear prerequisites required by Section 6415, the plaintiff, Cactus Heights Country Club, can recover on its refund claim only that amount paid which represents dues collected during the third quarter of 1960. This court so holds.

According to the government's audit, the club collected $3,353.79 in membership fees and dues during the third quarter of 1960, $915.04 of which represented dues and the remainder, or $2,-438.75, representing receipts from membership fees. Mr. Peterson had earlier testified that the figure of $3,353.79 represented only dues and that no membership fees were collected during this quarter. No further evidence was offered, however, to rebut the government's testimony, and this court therefore accepts the government's evidence on this point. If the introduction into evidence of a certified copy of an assessment in itself makes out a prima facie case for its validity (See United States v. Lease, 346 F.2d 696 (2d Cir. 1965)), considerable credence must be given to the facts and figures on which such assessment is based. Counsel for the plaintiff would presumably concede this, as his brief indicates that the figure includes both dues and membership fees. Plaintiff, Cactus Heights, is therefore limited on its refund claim to the amount represented by the sum of $915.04 proportionately.

■ No question concerning the three-year limitation of Section 4243(b) having been raised, what has been stated previously could correspondingly dispose of the government's counterclaim but for one further circumstance. On January 20, 1961, the Treasury Department adopted a regulation which provided that

"amounts paid are not within the exemption unless they are earmarked by the club or organization at the time of receipt for use as provided by this paragraph." Treas. Regs. Sec. 49.-4243-2(b).

The effect of such regulations was stated by the United States Supreme Court to be as follows:

"It is settled by * * * decisions of this court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision." Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 157, 64 L.Ed. 297 (1920).

It would appear that the aforementioned regulation is in compliance with the general purpose of Section 4243(b), but this court here also is of the opinion that it merits prospective application only. Larkin v. United States, supra. The regulation, therefore, does not affect anything that transpired involving the three quarters of 1960 which are involved here, and it is for this reason that no mention of it was made in conjunction with the portion of this opinion devoted to plaintiff's refund claim. Nor does it have any effect as to the first portion of the first quarter of 1961, or more particularly, prior to January 20, 1961.

The question remains: Were any of the funds received by Cactus Heights Country Club during the periods in question "earmarked at the time of receipt" for a use provided for in Section 4243 (b)? Admittedly, this question has been of some concern to this court. It is to be remembered that most receipts from dues and membership fees were deposited in one bank and commingled with other funds. Then too, the account ledger for this particular bank does not reveal that capital expenditures were made from that account. However, funds were drawn on this account and placed in other banks from which such capital expenditures were in fact made. Furthermore, this procedure does not necessarily indicate that the receipts were not earmarked at the time they were received. Had nothing further been done by the plaintiff, though, this court would be compelled to hold that the regulation had not been complied with and that the government would be entitled to recovery on its counterclaim for the period from January 20, 1961, up to and including the second quarter of 1962. The directors of this corporation, however, possessed some redeeming foresight which was apparently unbeknownst to them. Article VIII, Section 1, of the amended by-laws of Cactus Heights Country Club provided as follows:

> "The Board of Directors of the corporation shall apply not less than eighty per centum of the amount collected from Certificates of Membership and from Annual Membership dues toward Capitol (sic) improvements and/or toward the retirement of debts acquired for capital improvements, and the remainder, if any, shall be applied to administrative expense and/or the operation of club facilities."

The court is of the opinion that the existence of this provision in the corporate by-laws was sufficient to satisfy the "earmarking" requirement with respect to 80 per cent of the dues and fees received during the period in question. As to the remainder, however, no evidence of any earmarking can be found, and the government is therefore entitled to the sum represented by 20 per cent of 20 per cent of the amount collected by Cactus Heights Country Club as dues and membership fees from January 20, 1961, up to and including June 31, 1962. In other words, the government is entitled to only 20 per cent of the sum it originally assessed for the periods in question.

One final matter needs to be considered before the amount of the award can be determined and this is whether plaintiff, Cactus Heights Country Club, is subject to the penal provisions of either Section 6651(a) or Section 6656 of the Internal Revenue Code of 1954. Those sections provide, in substance, that a penalty (under 6656) or an addition to the tax (under 6651(a)), or both, shall be imposed for the failure to file a return (under 6651(a)) or the failure to make a deposit of taxes (under 6656) unless such "failure is due to reasonable cause and not due to willful neglect. * * *" Again, it should be pointed out that Mr. Peterson testified he talked to Mr. Hanson, an attorney, seeking his advice concerning the applicability of the exemption and Mr. Hanson informed him that, in his opinion, Cactus Heights was exempt. This testimony was corroborated substantially by Mr. Hanson. In this regard, the Second Circuit Court of Appeals, in Haywood Lumber & Min. Co. v. C. I. R., 178 F.2d 769, 771 (1950), was prompted to say:

> "The courts have recognized that reliance on the advice of counsel * * *,

sought and received in good faith is 'reasonable cause' for failing to file a tax return. We think those cases are correctly decided and in principle control the case at bar."

This court likewise feels that the principle is controlling here both as to the failure to file a return and the failure to deposit taxes and concludes that any and all claims for penalties should be, and are hereby, denied.

This leaves the matter of computation in terms of tax liability of what has been concluded here. The government's assessment in individual quarters for the periods involved is as follows:

| Quarter Ending | Tax Liability | + | Penalties |
|---|---|---|---|
| 6 – 30 – 60 | $11,910.67 | | $3,096.77 |
| 9 – 30 – 60 | 558.97 | | 147.24 |
| 12 – 31 – 60 | 1,128.95 | | 284.39 |
| 3 – 31 – 61 | 4,220.28 | | 1,099.31 |
| 6 – 30 – 61 | 4,067.44 | | 1,062.82 |
| 9 – 30 – 61 | 1,486.25 | | 389.53 |
| 12 – 31 – 61 | 897.08 | | 233.15 |
| 3 – 31 – 62 | 4,444.69 | | 1,141.91 |
| 6 – 30 – 62 | 2,634.41 | | 694.36 |

There is no liability for the second or the fourth quarters of 1960. Plaintiff is entitled to a refund for the third quarter of 1960 insofar as the amount paid represents a tax on annual dues. The sum of $915.04, the amount of the dues received during this quarter, is approximately 27 per cent of the total amount collected as dues and fees during that quarter, $3,353.79. Cactus Heights is therefore entitled to a refund of 27 per cent of $558.97, or $150.92, plus the penalties paid on that amount, $39.76, for a total of $190.68. This amount will be set off against the tax liability determined under the government's counterclaim.

As indicated earlier, the government's recovery for the quarters involved during 1961 and 1962 is premised on the "earmarking" regulation. Recovery is therefore limited to 20 per cent of the original assessment with the exception that the original assessment for the first quarter of 1961 must first be reduced 22 per cent, which represents the time during such quarter the regulation

was not in effect.[1] The amount of plaintiff's tax liability, which represents the amount awarded to the government on its counterclaim, is accordingly as follows:

| Quarter Ending | Tax Liability |
|---|---|
| 3 – 31 – 61 | $658.36 |
| 6 – 30 – 61 | 813.49 |
| 9 – 30 – 61 | 297.25 |
| 12 – 31 – 61 | 179.42 |
| 3 – 31 – 62 | 888.94 |
| 6 – 30 – 62 | 526.88 |
| | $3,364.34 |
| Less plaintiff's refund | 190.68 |
| | $3,173.66 |

The clerk is instructed to enter judgment for the government and against Cactus Heights Country Club in the amount of $3,173.66 with interest from the date of the assessment, June 5, 1964.

This memorandum decision will constitute the court's findings of fact and conclusions of law.

1. The court concedes that technically any reduction should be based upon the exact dates on which such dues and membership fees were received. Such figures, however, were never introduced at the trial and percentages must, of necessity, be resorted to.