MARYLAND COUNTRY CLUB, INCORPORATED, Appellant,

v.

UNITED STATES of America, Appellee.

No. 75–1685.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1975.

Decided March 18, 1976.

---

Charles G. Page, Baltimore, Md. (White, Page & Lentz, Baltimore, Md., on brief), for appellant.

Philip I. Brennan, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, and Elmer J. Kelsey, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., on brief), for appellee.

Before WINTER and FIELD, Circuit Judges, and MERHIGE,* District Judge.

WINTER, Circuit Judge:

Former § 4241 of the Internal Revenue Code of 1954,[1] imposed a twenty percent excise tax on dues or membership fees and initiation fees paid to any social, athletic or sporting club. Former § 4243,[2] however, exempted such dues and fees from the tax if they were paid for capital improvements, or furnishings or fixtures required as a result of capital construction, and used for such purposes within three years. A regulation, 26 C.F.R. § 49.4243–2(b)(iii), provided that even if otherwise exempt under § 4243, such dues and fees would not be exempt "unless they are earmarked by the club or organization at the time of receipt for use [for an exempt purpose]." This case raises a question of whether certain initiation fees, membership fees and special assessments collected by Maryland County Club, Incorporated (Country Club) were sufficiently "earmarked" to entitle them to tax exemption.

It began when Country Club sued to recover excise taxes and penalties which allegedly were erroneously assessed and collected for the first quarter of 1965. The government counterclaimed for unpaid taxes and penalties for other quarters.[3]

Under the evidence adduced, the principal issue in the district court and on appeal is

---

* Honorable Robert R. Merhige, Jr., United States District Judge, Eastern District of Virginia, sitting by designation.

1. Int.Rev.Code of 1954, Ch. 736, 68A Stat. 501, as amended P.L. 86–344 § 3(b), 73 Stat. 618 (repealed 1965).

2. Int.Rev.Code of 1954, Ch. 736, 68A Stat. 502, as amended P.L. 86–344 § 3(a), 73 Stat. 618 (repealed 1965).

3. In count 1 of its counterclaim, the government sought judgment for (a) the one hundred percent penalty tax under § 6672 of the Internal Revenue Code of 1954, (b) a penalty under § 6651 of the Internal Revenue Code of 1954 for willful failure to file a return, and (c) a penalty under § 6656 of the Internal Revenue Code of 1954 for willful failure to deposit taxes. In count 2 of its counterclaim, the government sought judgment for the taxes assessed under §§ 4241 and 4243(b) of the Internal Revenue Code of 1954.

whether the initiation fees, membership fees and special assessments collected by Country Club during the taxable period were sufficiently "earmarked" within the meaning of the regulation to afford them the tax-exempt status to which, concededly, they were otherwise entitled. The district court ruled that they were not. While the district court gave judgment to Country Club on its complaint because it concluded that the government was barred from collection of taxes from July 1, 1964 through December 31, 1965 (including the quarter for which Country Club sought refund)—a ruling not questioned on appeal—it gave judgment for the government for the other taxable periods for which it sought judgment in its counterclaim. We disagree and, hence, we reverse and remand the case for entry of judgment for Country Club on the government's counterclaim.[4]

## I.

Extensive recitation of the facts is unnecessary because the main operative facts are undisputed.

■ Country Club is a "social, athletic, or sporting club or organization" within the meaning of former § 4241. In 1960, the club purchased property on which a golf course had been constructed and agreed to construct thereon a clubhouse and related facilities. Country Club represented to its existing and prospective members that proceeds from the sale of memberships (initiation fees) would be used exclusively for construction costs and would be tax exempt. It made no similar representation with regard to annual dues.

All amounts collected (initiation fees, assessments and annual dues) were deposited in a non-segregated checking account. This account was used indiscriminately to pay operating costs as well as capital costs. Country Club's ledgers, books and records, nevertheless, faithfully reflected all capital contributions by members (divided into categories of initiation fees, payments for capital stock and assessments) and itemized all capital expenditures. It is undisputed that, within three years from the date of collection, Country Club actually expended for tax-exempt purposes an aggregate amount in excess of the collections that it asserts were tax-exempt. Country Club also faithfully recorded its collections of dues, reported the collections to Internal Revenue Service on the prescribed forms, and paid the tax thereon.

## II.

To support affirmance, the government argues that the district court correctly decided that Country Club failed to earmark its collections for capital expenses in compliance with the regulation. The government asserts that the district court's finding is a finding of fact which is not clearly erroneous because the evidence shows that Country Club commingled such collections with collections of non-exempt payments by members by depositing both in a single bank account and drew on that account without regard to the portions of the balance therein attributable to each type of collection. We are not persuaded. The district court's conclusion was essentially one of law and we disagree with the district court's interpretation of the requirements of the regulation.

■ The regulation does not prescribe how collections are to be "earmarked." Its purpose would appear to be to facilitate the collection of a tax, the imposition of which depended in most part upon the happening of events which might occur as late as three years after the payments subject to the tax were made. Thus, the regulation was designed to require a record of the receipt of payments dedicated to a tax-exempt pur-

4. The district court entered judgment for the government on count 1 of its counterclaim. While the district court declined to enter a judgment for either party on count 2 of the government's counterclaim, we think that under the views expressed in this opinion and the facts conceded by the government in argument before us, the government cannot recover under that count. It is therefore appropriate to direct the entry of judgment for Country Club on count 2 without further ado.

pose, a continuing record of their status, and use of the payments within three years for that purpose. Those purposes were served here. Country Club made clear to its members that initiation fees, membership fees and assessments (but not dues) were to be used for capital expenditures. At all times its books and records disclosed what was collected for such purposes and what was collected for other purposes, and the government concedes that the sums collected for tax-exempt purposes were spent for those purposes within three years.

The only additional "earmarking" that could have been accomplished would be to have deposited the tax-exempt collections in a separate bank account and to draw on that account solely for capital expenditures. This the government asserts was required for Country Club to comply with the regulation. But the government conceded in oral argument that if Country Club had established and maintained separate capital and operating accounts the tax-exempt status of collections placed in the capital account would not have been lost if Country Club had temporarily "borrowed" from the capital account to make payments for operating expenses, or had temporarily "borrowed" from the operating account to make payments for capital costs, provided that any such "borrowings" were repaid. In our view, the concession substantially dilutes the persuasiveness of the argument that segregation of collections in two or more bank accounts was necessary to effect compliance with the regulation.

There is a dearth of authority on what constitutes "earmarking" within the meaning of the applicable regulation—probably because the scheme of tax previously described was so short-lived. Both parties, however, cite *Cactus Heights Country Club v. United States*, 280 F.Supp. 534 (D.S.D. 1967), as the controlling case. We read it as supporting the position of Country Club.

In *Cactus Heights*, members were billed for dues, membership fees and ordinary expenses on the same statement. While the club maintained several bank accounts, remittances from members were deposited in one of the several accounts without segregation of funds as to their nature. Capital expenditures were apparently made only from a single account, to which, from time to time, funds were deposited from the other accounts. Although the club expended more for capital improvements than the membership fees, assessments and annual dues it collected, the court indicated that that alone would not satisfy the "earmarking" requirement of the regulation. The club had a by-law, however, which required the directors to apply not less than eighty per centum of the amounts collected from certificates of membership and from annual membership dues toward capital improvements and/or the retirement of debt incurred for capital improvements, the balance to be applied to administrative and operating expense of club facilities. It was held that the by-law sufficiently "earmarked" eighty percent of the dues and fees collected within the period to render them tax-exempt. As to the balance, the court held the tax applicable since it could find no other evidence of "earmarking."

█ We hold, in the instant case, that Country Club "earmarked" its capital collections in compliance with the regulation. Not only did it advise members and prospective members about what funds would be devoted to capital expenditures, it maintained accurate records to reflect the amount of such funds collected and how they were being applied, and it expended those funds and more for capital purposes. We think that the statute and the regulation were fully satisfied.

REVERSED AND REMANDED.