INTERNATIONAL E22 CLASS ASSOCIATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16074–80X.     Filed January 25, 1982.

*Michael J. Rufkahr, Mary F. Voce,* and *Paul J. Henry,* for the petitioner.

*Kevin W. Cobb,* for the respondent.

OPINION

WILBUR, *Judge*: Petitioner requested a determination by respondent of petitioner's qualification as an exempt organization described in section 501(c)(3).[1] No notice of determination has been issued in this matter by respondent. Petitioner therefore invokes the jurisdiction of this Court for a declaratory judgment pursuant to section 7428.[2] The sole issue for our

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

[2] The statutory prerequisites for declaratory judgment have been satisfied. Petitioner is the organization whose qualification is at issue (sec. 7428(b)(1)). Additionally, petitioner is deemed to have exhausted its administrative remedies (sec. 7428(b)(2)) by virtue of respondent's failure to make a determination with respect to petitioner's request for exempt classification within 270 days after such request was made. See also Rule 210(c), Tax Court Rules of Practice and Procedure.

decision is whether petitioner's use of a "master plug" and "measurement templates" in enforcing amateur racing constitutes the provision of athletic facilities or equipment contrary to the proscription of sections 501(c)(3) and 170(c)(2).

This case was submitted for decision on the basis of the stipulated administrative record under Rule 122, Tax Court Rules of Practice and Procedure.[3] See also Rule 217(b). The evidentiary facts and administrative record are assumed to be true for purposes of this proceeding, and the administrative record is incorporated herein by reference.

Petitioner International E22 Class Association commenced full operation on January 1, 1977.[4] Its principal office was in New York, N.Y., when it filed its petition in this case.

Petitioner filed a Form 1023, Application for Recognition of Exemption, under section 501(c)(3) on December 29, 1977. Petitioner applied for exemption solely on the basis that it is organized and operated to foster national and international amateur sports competition.

By letter dated December 13, 1978, respondent proposed to rule that petitioner did not qualify for exempt status because an arrangement for the collection of royalties allegedly caused part of petitioner's net earnings to inure to the benefit of a private individual, Mr. E. W. Etchells,[5] and because petitioner allegedly served Mr. Etchells' private interest by fostering the building of E22 Class yachts for which Mr. Etchells received royalties.

Consequently, petitioner and Mr. Etchells agreed to alter the arrangement so that, effective December 31, 1978, petitioner would no longer act as a conduit for the collection of royalty fees due to Mr. Etchells from builders. Petitioner thereafter protested respondent's proposed denial of recognition of exempt status under section 501(c)(3).

Subsequent to the amendment of the agreement between petitioner and Mr. Etchells for collection of royalties, respon-

---

[3] All "Rule" references are to the Tax Court Rules of Practice and Procedure.

[4] Petitioner was organized over a period of 3 years. Prior to Jan. 1, 1977, petitioner's operations had been run principally through the U.S. National E22 Class Association.

[5] Mr. Etchells designed the E22 Class sailboat. Petitioner, after its creation, collected from the builder of each new E22 Class boat a royalty in respect of patent rights and remitted it to Mr. Etchells.

dent withdrew his objection to petitioner's request for recognition of exemption for the period after December 31, 1978, with respect to the private benefit and inurement issues. He raised, for the first time, his objection based on the ground that petitioner provides athletic facilities and equipment in the form of a master plug and measurement templates used in enforcing amateur racing rules. For purposes of this proceeding, the parties agree that petitioner was not exempt prior to January 1, 1979. It is also undisputed that respondent failed to issue a final notice of determination of petitioner's status as an exempt organization.

According to petitioner's articles of association, it was organized:

to promote and further the interests of the International E22 Class throughout the world, for example:

(a) Maintaining the one-design character of the International E22 yacht.[6]

(b) Coordinating and managing the affairs and rules of the class.

(c) Making recommendations on the control of such matters to the International Yacht Racing Union.[7]

(d) Encouraging and coordinating national and international competition in the class.

These purposes are accomplished by activities including: (1) Supervising the conduct of builders of E22 Class sailboats through measurement of hulls, spars, and sails; (2) formulating and enforcing measurement rules relating to the shape of, and equipment and materials used in, E22 Class sailboats to ensure that all such sailboats conform to a standard design; (3) representing members before other organizations; (4) arranging races for E22 Class sailboats and administering the rules for the conduct of such races; and (5) publishing information about E22 Class racing.

---

[6]Racing sailboats, other than those which are used for ocean races, are organized in what are called "one-design" classes. The basis for fair and even competition between sailors of boats of such classes is that the boats and sails are all built and maintained to a standard set of specifications. To permit departure from those specifications could give a competitor an unfair advantage. The group administering a one-design class periodically checks the measurements of boats and sails that are being used in competition to assure compliance with the one-design rules.

[7]The International Yacht Racing Union is the recognized authority for the governance of Olympic and international sailboat racing competition.

Petitioner owns and maintains a master plug and measurement templates that are used in its activities for determining compliance of E22 Class sailboats with the specifications and measurement rules of petitioner.

The master plug is a precisely measured, full-size shape of the hull of an E22 Class sailboat. It is approximately 30 feet long, 10 feet wide, and 4 feet high, and is made of fiberglass. All E22 Class sailboat hulls must be built from the master plug. The master plug can only be used by a builder licensed to build E22 Class sailboats. The molds that the licensed builders use to make the E22 Class hulls must, by rule, be built by shaping them around the master plug. The purpose of that rule is to ensure that hulls built by different builders anywhere in the world have identical shapes and measurements.

Petitioner does not charge any fee for the use of the master plug. Any licensed builder who wishes to make a mold from the master plug may either do so, itself, or it may contract to have the mold made for it.

Petitioner's measurement templates are precisely measured pieces of aluminum or mylar that represent the required shapes of different parts of an E22 Class sailboat, such as the rudder, keel, mast, and boom. These templates enable the measurer, for example, to measure a rudder by holding the template up to the rudder. If the rudder comes within the lines of the template, it meets the measurement requirements. If it does not come within the lines, it fails and must be altered or replaced.

The measurement and inspection of the boats commence with their building. Each boat is built from a mold made from the master plug. A complete measurement of each boat is made at its completion by measurers who have been certified by the International Yacht Racing Union and appointed by petitioner for given geographic regions. If the measurements meet the E22 Class specifications, petitioner issues a measurement certificate. This certifies that the boat meets the requirements for international competition.

A partial inspection and measurement of boats is made at the time of each national and international championship. Only the boats that are entered in the championship, and only those parts of each boat that are likely to have been altered,

are inspected and measured. These inspections are made either by certified measurers or by representatives of the national association or local chapter in whose country or waters the event is being held.

Section 501(c)(3) provides that an organization shall be exempt from taxation if it is organized and operated exclusively "to foster national or international amateur sports competition *(but only if no part of its activities involve the provision of athletic facilities or equipment).*" (Emphasis supplied.)[8] The issue for our decision is whether petitioner's use of the master plug and measurement templates constitutes the provision of athletic facilities and equipment contrary to the proscription of section 501(c)(3). Petitioner contends the master plug and measurement templates are not "athletic" facilities or equipment because they have no athletic use. Petitioner maintains that the statutory proscription against provision of athletic facilities or equipment contemplates an organization which provides such facilities or equipment to the organization's members or to sports competitors, and that the master plug is available to boat builders without regard to membership in petitioner, and the measuring templates are used only by certified measurers or officials of petitioner in connection with officiating and protecting the integrity of competition sponsored by petitioner.

On the other hand, respondent contends that petitioner's activities involve the provision of athletic facilities or equipment. Respondent maintains that petitioner's rules require the use of the master plug and measurement templates for enforcing extensive measurement rules and for providing

---

[8]Sec. 501(c)(3) provides:

SEC. 501(c). LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

     \*      \*      \*      \*      \*      \*      \*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

measurement control services both at the time of construction and in connection with national and international races. We emphasize that respondent does not raise any other impediment to petitioner's classification as an exempt organization.

Respondent has the burden of proof in this instance. Rule 217(c)(2)(ii). For the reasons set forth below, we hold for petitioner.

Generally, in construing the language of the Internal Revenue Code, words are to be given their ordinary meaning. *Helvering v. Flaccus Oak Leather Co.*, 313 U.S. 247 (1941). Webster's Third New International Dictionary (1971), defines the word "athletic" as "designed or suitable for use * * * by athletes." While we agree with respondent's statement that the statutory provision in issue is clear and unambiguous, we decline to give it the broad construction he proposes.[9]

The master plug and measurement templates have no athletic use and are not "athletic facilities or equipment." The only use which may be made of the master plug is as a form for shaping a mold with which to manufacture sailboat hulls, and the only use which may be made of the measurement templates is to measure specific parts of an E22 Class sailboat. In reality, the items in issue here are not athletic facilities or equipment, but tools used by petitioner or its designees in formulating and enforcing extensive measurement rules and providing measurement services necessary to standardize competitive categories in the amateur competition petitioner fosters. We know of no athletic exercise, game, competition, or other endeavor in which those items may be used. It follows that under the ordinary meaning of the phrase, they cannot be "athletic facilities or equipment."

Even were we to decide otherwise, petitioner argues it still would not fall within the parenthetical qualification because no part of its activities involves the "provision" of athletic facilities or equipment. Petitioner finds support for its argument in the legislative history of the section.

As originally proposed, the amendment to section 501(c)(3)

---

[9]The regulations are no help to us in this matter. Those reflecting the changes of the Tax Reform Act of 1976, when the language in question was added to the Code, are still merely proposed. Even if they were in finalized form, the regulations do not contain a definition of the parenthetical phrase in issue.

(and likewise to section 170(c)(2)(B)), allowing exempt status for amateur sports associations did not contain the parenthetical qualification regarding athletic facilities and equipment. That qualification was added by the Conference Committee and explained as follows:

*Conference agreement* —The conference agreement follows the Senate amendment but provides that, to qualify for tax exemption as a charitable organization and for the receipt of deductible contributions, the organization must not make available athletic equipment or facilities. This restriction is intended to prevent the allowance of these benefits for organizations which, like social clubs, provide facilities and equipment for their members. * * * [S. Rept. 94–1236 (1976), 1976–3 C.B. (Vol. 3) 807, 946.]

Petitioner argues that this language indicates Congress intended to exclude only those organizations whose activities involve supplying athletic facilities or equipment *to their members*. Since petitioner's master plug is available to boat builders without regard to membership in petitioner, and the measurement templates are used only by certified measurers and race officials, petitioner reasons it does not engage in the "provision" of athletic facilities or equipment and thus does not come within the statutory proscription.

Respondent argues that Congress clearly did not want to extend the benefits of exemption to organizations composed of casual athletes. He views the Conference report as indicating only that Congress perceived the social club to be an organization with perhaps the most obvious potential for abuse of the exemption provision, and therefore mentioned it by way of example. To read it otherwise, respondent contends, would allow an organization to circumvent the statute merely by providing its facilities or equipment to nonmembers, also.

Neither party's argument is entirely persuasive, but the abuse Congress identified suggests that our reading of the term "athletic facilities" corresponds with the aims of the statute. However, we need not decide to whom facilities or equipment can or cannot be provided to qualify for exemption under section 501(c)(3), as the facilities or equipment involved herein cannot by any stretch of the imagination be termed "athletic." In the ordinary meaning of the terms, "athletic facilities" applies to physical structures like clubhouses, swimming pools, or gymnasiums, and "athletic equipment" applies to property used directly in athletic endeavors. Neither

term applies to property which can only be used in some manufacturing process or in the officiating of an event.[10]

Accordingly, for the reasons set forth, we hold petitioner qualifies for tax-exempt status under section 501(c)(3).

*An appropriate order will be entered.*

---

[10]We note that, while social clubs need not provide facilities or equipment at all (Rev. Rul. 74–148, 1974–1 C.B. 138 (bowling league); Rev. Rul. 67–139, 1967–1 C.B. 129 (gem and mineral club)), when they do provide them, the facilities and equipment are such that they would be compatible with the reasoning espoused above. See, for example, *Maryland Country Club, Inc. v. United States*, 539 F.2d 345 (4th Cir. 1976) (golf course and clubhouse); *Pittsburgh Press Club v. United States*, 536 F.2d 572 (3d Cir. 1976) (club rooms and facilities); *West Side Tennis Club v. Commissioner*, 111 F.2d 6 (2d Cir. 1940) (tennis courts and clubhouse); Rev. Rul. 69–281, 1969–1 C.B. 155 (swimming pool).