Thomas J. McGOWAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19078.

United States Court of Appeals
Fifth Circuit.

Nov. 17, 1961.

David W. Palmer, Destin, Fla., for appellant.

Harold M. Seidel, Atty., Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Miami, Fla., John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before BROWN, GEWIN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is another one of many similar cases in which operators of small water-

craft through their inveterate counsel have, with varying success, waged a running, relentless, vigorous battle with the Government over the application of the transportation tax, 26 U.S.C.A. § 4261.[1]

Most of the former cases have involved vessels used for fishing parties. Here the problem arises in connection with sight-seeing ships. The Taxpayer asserts, in the main, that none of the taxes paid for the years 1957–1958 was legally due for two reasons. First, the value of the transportation service actually rendered did not exceed 60¢ so this was an element expressly exempt under the statute. Second, the remainder of the cost of the cruise ticket represents payment for non-transportation services which are beyond the reach of the statute. These included the scenic or cultural benefit from seeing the sights, listening to the description of the scenery by an interlocutor and absorbing the interests during the mid voyage stopping point at the Indian village where Indians wrestled with alligators. Taxpayer also urged that if he was not completely successful on these theories, then, at least, the tax should be apportioned as between transportation and non-transportation services as various regulations and rulings contemplate.[2]

The trial court rejected the Taxpayer's claim for refund. But in doing so it never reached the merits concerning either of the two main contentions or the in-between request for suitable apportionment. The Court, rather, sustained the Government's basic contention that Taxpayer did not have standing to sue. This was so because Taxpayer had not satisfied either the express requirements of 26 U.S.C.A. § 6415(a)[3] or the Court-made amelioration by showing that Taxpayer, not his cruise "passengers" had borne the economic burden of the tax. Smith v. United States, 5 Cir., 1957, 242 F.2d 486; Davis v. United States, 5 Cir., 1956, 235 F.2d 174; United States v. Walker, 5 Cir., 1956, 234 F.2d 910.

The physical operations relate primarily to the merits of the claim, and hence no purpose is served in any extended recitation of the facts. A brief review does illumine the threshold question of standing or right to sue. For this, it suffices to paraphrase the summary set forth in the pretrial stipulation by which, without admitting their truth, the parties agreed that these facts would not be contested on the trial of the case.

The Taxpayer operated two boats for cruises in the Fort Lauderdale area. The boats departed from and returned to the

1. Knowles v. United States, 5 Cir., 1958, 260 F.2d 852; Davis v. United States, 5 Cir., 1957, 244 F.2d 308; Smith v. United States, 5 Cir., 1957, 242 F.2d 486; United States v. Knowles, 5 Cir., 1956, 235 F.2d 177; Davis v. United States, 5 Cir., 1956, 235 F.2d 174; United States v. Walker, 5 Cir., 1956, 234 F.2d 910; United States v. Walls, 5 Cir., 1956, 231 F.2d 440; Knowles v. United States, D.C.N.D.Fla., 1957, 157 F.Supp. 678; Brunson v. United States, D.C.N.D.Fla., 1957, 155 F.Supp. 748; Smith v. United States, D.C.N.D., Fla., 1957, 155 F.Supp. 743; Knowles v. United States, D.C.N.D.Fla., 1957, 155 F.Supp. 678; Walls v. United States, D.C.N.D.Fla., 1955, 144 F.Supp. 440; Walls v. United States, D.C.N.D.Fla., 1955, 137 F.Supp. 518; Gibson v. United States, D.C.N.D.Fla., 1955, 137 F.Supp. 296; Smith v. United States, D.C.N.D.Fla., 1953, 110 F.Supp. 892; Abbott v. United States, Ct.Cl., 1959, 175 F.Supp. 917 (Ad-

visory opinion pursuant to H.R.Res. 323, 85th Cong., 1st Sess. (1957)).

2. Taxpayer points to the following regulations and others: 26 C.F.R. §§ 49.4261–2 (d), 49.4261–3(c) (2), 49.4261–7(d), 49.-4261–8 and 8(f) (4), and 49.4263(a)–2 (a). Rev.Rul. 58–60, Rev.Rul. 55–565, and the recent ones Rev.Rul. 61–172 and Rev.Rul. 61–10, I.R.B. 1961–39, 10.

3. 26 U.S.C.A. § 6415(a). "Allowance of credits or refunds.—Credit or refund of any overpayment of tax imposed by section * * * 4261 * * * may be allowed to the person who collected the tax and paid it to the Secretary * * * if such person establishes, under such regulations as the Secretary * * * may prescribe, that he has repaid the amount of such tax to the person from whom he collected it, or obtains the consent of such person to the allowance of such credit or refund. * * *"

same dock, making one stop at an Indian village where the passengers were permitted to get off. A special attraction at this point was that of Indians wrestling alligators. The usual purpose for which people rode in these boats was for sightseeing. Taxpayer paid the Federal excise tax, the refund of which is the subject of this action, by taking 1/11th of the amount he received from the sale of tickets for these cruises.[4]

Of course the fact findings of the District Judge come here with the buckler and shield of F.R.Civ.P. 52(a), 28 U.S.C.A. But because the findings carry such weight, we must be certain that in making credibility choices—particularly of the basic kind in which the question revolves around the selection of one of two divergent statements—the trier of fact has evaluated them in the light of proper legal standards. Ferran v. Flemming, 5 Cir., 1961, 293 F.2d 568; Butler v. Flemming, 5 Cir., 1961, 288 F. 2d 591; Mitchell v. Mitchell Truck Line, Inc., 5 Cir., 1961, 286 F.2d 721; Henderson v. Flemming, 5 Cir., 1960, 283 F.2d 882; United States v. Williamson, 5 Cir., 1958, 255 F.2d 512; Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186. In this approach we are of the view that the finding ought not to stand. In so holding we do not determine that the District Court, as a matter of law, had to conclude, one way or the other, that Taxpayer had or had not sustained the economic burden test. Similarly, this is not a forecast of what the ruling must be on the retrial on either substantially the same evidence or on different proof. That must await the retrial.

Both the Taxpayer and his wife, who was active in the operation of the business, testified positively that the tax had not been collected from the cruise customers. So did McConnell, the previous owner of the M/V Abeona from whom Taxpayer bought the vessel and the business. More important, this was corroborated rather impressively by communications from Taxpayer and his counsel and representatives of the District Director's office seeking administrative relief by rulings and otherwise from the impact of this tax. Many of these letters were offered in evidence and they show two things: first, a relentless, persistent, tenacious, contemporary assertion that no tax was legally due; and second, that no such tax was being collected from cruise customers.

While the Government now urges that the Court was entitled in the fact finding process to reject this testimony as untrue because a Revenue Agent testified to a prior inconsistent statement given by Taxpayer and his wife to the Agent during the administrative investigation of the claim for refund, it seems almost positive that the Judge did not rest it on this ground at all. As corrected by the Trial Judge's recent order, the record

4. The stipulation stated that "The following facts, though not admitted, are not to be contested at the trial by evidence to the contrary: The nature of plaintiff's business operation during the period in question was as follows: Plaintiff operated two boats, the Abeona and Cocoon. These boats each had seating capacities in excess of fifty persons. Plaintiff usually operated these boats on daily cruises along the rivers and canals surrounding the Fort Lauderdale area. One stop was made along the way at an Indian village where the passengers were permitted to get off the boat and look around. The cruise was concluded when the boat had completed its cruise around the Fort Lauderdale area and returned to the dock where it had initially commenced. Plaintiff advertised these cruises through various media to the tourists and people in the area. The usual purpose for which people purchased tickets on plaintiff's tours was for the purpose of sightseeing. When plaintiff commenced his operations in April 1957, he charged as his usual price for the tickets $2.00 for adults and $1.00 for children. Sometime near the end of the period in question, plaintiff increased the price of his tours to $2.50 for adults and $1.25 for children passengers. Plaintiff paid the Federal excise tax, the refund of which is sought herein, by taking 1/11th of the amount he received from the sale of tickets as above described, paying this amount as the tax. Plaintiff also operated charter tours but he did not pay any tax on the amounts charged for such charter tours."

now shows that on rebuttal counsel for Taxpayer proferred Taxpayer and his wife to refute the Agent's prior inconsistent statement. To this the Judge stated that the record would show that it was stipulated that if recalled they would deny Agent's testimony. Since a critical fact finding on a decisive issue turned on *when* Taxpayer (and his wife) was telling the truth, it seems quite certain that this distinguished and experienced Trial Judge would have desired their actual testimony with the searching exposure of cross examination and not merely a lawyer's denial as though a matter of rote.[5]

The Trial Judge's fact finding was, as his memorandum opinion reflects, based rather on two factors quite independent of any such run-of-the-mill credibility choice. The first was that "since the $2 fare charged by [Taxpayer's] predecessor included the tax, it is reasonable to assume that the same fare charged by the [Taxpayer] likewise included the tax." The second was that Taxpayer "by taking 1/11 of the total paid for transportation" in computing the quarterly tax payments made to the Government demonstrated as a matter of "mathematical necessity" that "the 10% tax must have been included in the amount charged passengers."

As to the first, the issue is not whether Taxpayer's predecessor collected the tax. The question concerns the Taxpayer's conduct after he commenced his own operations. In any event, the evidence showed that as to the predecessor, printed tickets showing an established price plus a specified federal excise tax were used for only two weeks. Thereafter they were discontinued, and all such tickets destroyed. It is uncontradicted that Taxpayer never used any tickets which indicated that the transportation tax was being collected. The fact that

Taxpayer charged a $2 fare when his operations were commenced hardly supports the inference that since for a time the predecessor expressly included the tax in that same amount, it is therefore "reasonable to assume that the same fare charged by the [Taxpayer] likewise included the tax." Certainly this would not be so in the light of the persistent contemporaneous contentions that no tax was due by anyone.

■ The second factor—the use of the 1/11th fraction—is similarly deficient in the light of this whole record. The Trial Judge in his *arguendo* assumption gave considerable currency to the suggestion running through this whole record that the use of the 1/11th fraction came from administrative suggestions made by Revenue Agents in handling the vexing problem confronting these small businessmen in making quarterly returns and payments of a tax which they then thought, and still contend, was not legally due. There was a practical problem facing both Government and boat operators alike. The Director had the absolute duty to collect the full measure of the tax. The vessel operators, on the other hand, had the right to preserve, if they could, their contention for appropriate court decision. In the meantime, whether the tax was, or was not, collected from cruise customers, the obligation was a compelling one on the vessel operator to file a quarterly return and make payment of the tax. 26 U.S.C.A. § 4291. Unless payment was made, vessels, bank accounts, and other assets would be subject to attachment or seizure under distraint. Save in the rarest occasions, injunctive relief is not available in view of the prohibition of 26 U.S.C.A. § 7421; and see United States v. Curd, 5 Cir., 1958, 257 F.2d 347; Enochs v. Williams Packing & Navigation Co., 5 Cir., 1961, 291 F.2d

---

5. In addition to this, the Agent's prior inconsistent statement, though not objected to, came in with no predicate laid. See, 3 Wigmore, Evidence §§ 1025–29 (1940); McCormick, Evidence § 37 (1954). And, as related by the Agent from the stand, it was couched in the most obvious conclusions which the Taxpayer and wife would hardly have employed, e. g., " * * and we asked them about the Federal excise tax and they both stated that they felt that it was included in the total price that they charged * * *."

402; Poretto v. Usry, 5 Cir., 1961, 295 F.2d 499 [No. 18645, Oct. 20, 1961]. See aso Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. See also 9 Mertens, Law of Federal Income Taxation § 49.212.

In the face of these persistent contentions made by this Taxpayer—and others in similar operations—that no transportation tax was due for any of these activities, it is not reasonable to read into the choice of the 1/11th fraction an implication which would set at nought all that these boat operators and their vigorous counsel were undertaking to establish. And yet, in the final analysis, this was deemed by Government counsel to be decisive, if not single, factor.[6] Adopting this contention, the Trial Judge likewise treated it as of dominant, decisive significance.

But by itself and in its relation to this record, the fraction of 1/11th proves nothing. The choice was made after the ticket was sold to the customer. It was made quarterly when some return and some tax had to be paid. Its only significance in this context is in determining whether the correct amount of tax was paid. It does not support other inferences on whether such a tax in any amount had been paid by others to Taxpayer at a previous time. That was the issue in suit.

■■ The cause must therefore be reversed and remanded for a new trial on this and the other issues presented and for such other and further proceedings as are consistent [7] with this opinion. We take pains to reiterate that nothing said or unsaid, expressed or implied, is an expression or an intimation, one way or the other, how the issue on such retrial should or must be resolved. That awaits the trial.

Reversed and remanded.

---

6. In the colloquy with the Court over the relevance of testimony on whether the Taxpayer included the tax as such in the amount charged his customers, Government counsel stated:
   "Now, with respect to that factual issue [Taxpayer] has contended in his deposition that he did not. Now, the Government contends that he did. And the *sole reason* that we contend he did is the way he computed the tax. That is, he took one-eleventh of the amount charged rather than taking ten per cent of the amount charged, which the tax would have been had he not included it." (Emphasis supplied)

7. Taxpayer contends that there has been a denial of a right to jury trial under 28 U.S.C.A. § 2402; see 1954 U.S.Code and Congressional Administrative News, Conference Report, pages 2720–2721. The complaint was filed November 7, 1960, with the Government's answer filed January 6, 1961. Not until after denial of many motions for summary judgment, discovery, and the like did Taxpayer move on the eve of trial for a jury trial. This was not timely under F.R.Civ.P. rule 38 (b). The Court on remand does, however, have the right to allow a jury trial in its discretion. See Jackson v. King, 5 Cir., 1955, 223 F.2d 714, 719. See also 2 Barron & Holtzoff, Federal Practice and Procedure § 879 (1960 Wright Supp.).