## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 15-10468

————

BOMBARDIER AEROSPACE CORPORATION,

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas

Before BENAVIDES, DENNIS, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Bombardier Aerospace Corporation claims it is not required to remit federal excise tax on fees collected from participants in its fractional-aircraft-ownership program. The district court disagreed and ruled in favor of the Government on cross-motions for summary judgment. We AFFIRM.

### FACTS AND PROCEDURAL BACKGROUND

During the successive quarterly tax periods in 2006 and 2007, which are the ones relevant here, Bombardier Aerospace Corporation operated a fractional-aircraft-ownership program called "Flexjet." Flexjet participants bought fractional interests in aircraft, which provided them with on-demand access to a fleet of aircraft through a dry lease (i.e., the lease of a plane without

No. 15-10468

a flight crew) exchange pool.  Bombardier provided all of the management services necessary to support Flexjet.  Such services included, but were not limited to, scheduling maintenance, securing insurance, staffing the aircraft with qualified pilots and crewmembers, and maintaining records required by the Federal Aviation Administration ("FAA").

In exchange for its services, Bombardier assessed three types of fees against Flexjet participants:

- Monthly Management Fees ("MMFs"), or fixed charges covering costs associated with aircraft ownership regardless of whether the aircraft is flown (e.g., crew salaries, insurance, etc.);

- Variable Rate Fees ("Variable Fees"), or variable charges covering costs associated with flight time (e.g., fuel, weather services, communications services, etc.); and

- Fuel Component Adjustment ("Fuel Fees"), or charges covering fuel costs not otherwise included in the other fees (collectively, "fees").

Under 26 U.S.C. § 4261(a), any "amount paid for taxable transportation" is subject to federal excise tax.  "Taxable transportation" includes travel by air meeting certain geographic requirements not at issue in this case.  *See id.* § 4262.  During the relevant tax periods, Bombardier collected Section 4261 tax on Variable Fees and Fuel Fees assessed against Flexjet participants, and remitted that tax to the IRS.  It did not, however, remit tax on MMFs.  The IRS audited Bombardier and assessed excise tax on MMFs collected during that time.  Bombardier objected, arguing it was not subject to the tax during the 11 years prior to the relevant tax periods, even though it had undergone two IRS audits, and nothing had changed about its business or the law.

In May 2012, unable to resolve the dispute administratively, Bombardier paid a portion of the MMFs assessment and filed this lawsuit.  In its motion for summary judgment, Bombardier contended that, as a matter of law, it owed

2

No. 15-10468

no Section 4261 excise tax on any of the fees collected.  Because tax on Variable Fees and Fuel Fees had already been remitted, Bombardier sought a refund of taxes paid on those fees.

The Government counterclaimed for the unpaid tax on MMFs, plus penalties, unassessed interest, and statutory additions.  In its cross-motion for summary judgment, the Government also argued Bombardier lacked standing to bring its refund lawsuit for taxes paid on Variable Fees and Fuel Fees.  The district court held that the IRS properly assessed tax on the fees, and that Bombardier had not met the statutory requirements to seek a refund for any overpayment on Variable Fees and Fuel Fees.  Bombardier timely appealed.

## DISCUSSION

We review issues of statutory interpretation and summary judgment *de novo*.  *In re Lively*, 717 F.3d 406, 408 (5th Cir. 2013) (statutory interpretation); *Kimbell v. United States*, 371 F.3d 257, 260 (5th Cir. 2004) (summary judgment).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

## I.    *Statutory Requirements for a Refund Lawsuit*

Bombardier first seeks a refund for Section 4261 tax paid on Variable Fees and Fuel Fees it collected during the relevant tax periods because such fees are not "amount[s] paid for taxable transportation."  The district court dismissed the claim, however, concluding Bombardier had not met the statutory requirements to sue.[1]  Under 26 U.S.C. § 6415(a), if a collecting entity

---

[1] The Government did not argue that Bombardier failed to meet the statutory requirements to sue related to the tax paid on MMFs because Bombardier bore the economic burden of that tax itself.  *See McGowan v. United States*, 296 F.2d 252, 253–54 (5th Cir.

No. 15-10468

like Bombardier overpays on tax imposed by Section 4261, it may be entitled to a credit or refund if it "establishes . . . that [it] has repaid the amount of such tax to the person from whom [it was] collected . . . , or obtains the consent of such person to the allowance of such credit or refund."[2]

Here, Bombardier does not contend that it has repaid any of the tax it collected on Variable Fees and Fuel Fees to Flexjet participants, or that it has obtained the consent of Flexjet participants to receive a refund. Instead, Bombardier argues none of that is a prerequisite to suit and can be fulfilled later in litigation. Bombardier relies largely on the text of Section 6415(a), which does not expressly state that a claimant must repay participants or obtain consents before it can file a lawsuit, and on two court opinions.

Bombardier cites one decision where an employer sought a refund for the employee portion of an employment tax. *Chicago Milwaukee Corp. v. United States*, 40 F.3d 373, 374 (Fed. Cir. 1994). Before the lawsuit could be filed, a regulation-compliant administrative claim had to be submitted to the IRS. *Id.* A Treasury Department regulation in effect at the time required the administrative claim to "include a statement that the employer has repaid the tax to such employee or has secured the written consent of such employee to allowance of the refund." *Id.* at 375 (citing 26 C.F.R. § 31.6402(a)–2(a)(2) (1994)). The employer did not fulfill either requirement before pursuing its claim. *Id.* The Federal Circuit, noting there was no timing requirement in the regulation, held the claim was not barred. *Id.* at 375–76.

---

1961). Bombardier did not collect those taxes from Flexjet participants and then remit them to the IRS; it paid a portion of the MMF taxes itself when it filed this lawsuit. *See* 26 U.S.C. § 4263(c) (imposing obligation to pay Section 4261 tax on carrier where tax is not paid at time transportation is made).

[2] The parties argue about whether this is a standing issue, but the district court construed it properly as a "straightforward question of statutory interpretation: whether [Bombardier] . . . met the requirements for bringing suit under." *See* 26 U.S.C. § 6415(a).

No. 15-10468

Comparing Section 6415(a) to the *Chicago Milwaukee* regulation, a district court recently held that "compliance at any time before the refund issues" fulfills the purpose of the statute, i.e., "prevent[ing] a company from reaping a windfall by recovering taxes already passed on to its customers." *NetJets Large Aircraft, Inc. v. United States*, 80 F. Supp. 3d 743, 752 (S.D. Ohio 2015). Because Section 6415(a) does not state when these requirements must be satisfied, the *NetJets* court concluded that making the requirements a prerequisite to suit would "impose[] a harsh burden without good reason." *Id.* The *NetJets* case involved a Bombardier competitor that operated a fractional-aircraft-ownership program. *Id.* at 751. Like Bombardier, the competitor denied liability for Section 4261 tax and did not repay fees collected or seek participants' consent before filing its refund lawsuit. *Id.*

Other cases from the Federal Circuit analyzing Section 6415(a), though, undermine Bombardier's dependence on *Chicago Milwaukee*. For example, the Federal Circuit's predecessor[3] dismissed a Section 6415(a) refund claim where the claimant did not bear the economic burden of the tax itself, repay the tax to those from whom it was collected, or obtain consents. *Epstein v. United States*, 357 F.2d 928, 937–38 (Ct. Cl. 1966). The Court of Claims also had held that allowing a lawsuit to continue without first fulfilling the requirements would defeat the purpose of the statute "to preclude . . . unjust enrichment." *Gumpert v. United States*, 296 F.2d 927, 928–29 (Ct. Cl. 1961).

We agree with the district court, moreover, that *Chicago Milwaukee* is not especially analogous. That case interprets a regulation that varies materially from Section 6415(a). While the Treasury regulation in *Chicago Milwaukee* merely requires a "statement" that the employer has repaid the tax

---

[3] "Court of Claims cases, until overturned by [the Federal Circuit] en banc, are binding precedent . . . ." *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368, 1373 (Fed. Cir. 2000).

or secured consents, the statute at issue here mandates that a claimant "establish" that it has fulfilled one of those two requirements. *Compare* 26 C.F.R. § 31.6402(a)–2(a)(2) (1994) *with* 26 U.S.C. § 6415(a). We have held that the plain language of a statute controls, "reading it as a whole and mindful of the linguistic choices made by Congress." *In re Universal Seismic Assocs., Inc.*, 288 F.3d 205, 207 (5th Cir. 2002). We add that the *Chicago Milwaukee* dealt with requirements that must be met in filing an administrative claim that complies with regulations. *See* 40 F.3d at 375. Here, the question is whether repayment or consents are statutory prerequisites to civil action.[4]

Furthermore, our own precedent aligns with the Federal Circuit's interpretation of Section 6415(a). In one case, a district court had rejected a Section 6415(a) refund suit because the plaintiff "had not satisfied . . . the express [statutory] requirements . . . or the Court-made amelioration by showing" it had paid the tax itself. *McGowan v. United States*, 296 F.2d 252, 253 (5th Cir. 1961). We remanded for a new trial because the evidence was insufficient to sustain the district court's finding that the plaintiff had not borne the economic burden of the tax. *Id.* at 256. The district court on remand reiterated the prerequisites rule, noting that if "it is admitted that [the plaintiff] did not make the refund . . . or obtain consents" required by Section 6415(a), "that ends the suit . . . ." *McGowan v. United States*, 222 F. Supp. 329, 330 (S.D. Fla. 1962). Without specifically addressing the prerequisites rule, we agreed with the district court's ruling on a subsequent appeal. *McGowan v. United States*, 323 F.2d 655 (5th Cir. 1963).

In sum, the district court's interpretation of Section 6415(a) is consistent

---

[4] Bombardier also contends that Revenue Ruling 69-508, 1969-2 C.B. 262, 1969 WL 18851, requires that we find in its favor. Revenue Ruling 69-508, though, deals with whether the Section 6415(a) requirements are prerequisites to filing a timely administrative claim with the IRS, not a civil action.

No. 15-10468

with the statute's plain language and with authority from this and other circuits. This outcome does place an additional burden on entities already saddled with the responsibility of collecting the tax, but it also prevents unjust enrichment. It was proper for the district court to dismiss Bombardier's refund claim.

## II.    *Bombardier's Tax Liability Under Section 4261*

Bombardier next asks us to conclude that because it is not engaged in "commercial aviation," it is not liable for Section 4261 excise tax on any of the fees it collects from Flexjet participants. Alternately, Bombardier argues that MMFs, as fixed costs unrelated to actual air transportation, are not taxable under the statute. We examine these arguments in turn.

### A.    *The Proper Test and Its Application*

The district court applied the IRS's "possession, command, and control" test to determine that the fees at issue here are "amount[s] paid for taxable transportation." *See* 26 U.S.C. § 4261(a). Bombardier's argument on appeal focuses almost exclusively on attacking the test employed and not its application. Leaning mostly on legislative history, Bombardier asserts that the district court should have used the "commercial aviation" test.

Bombardier traces its proposed test to a 1970 Congressional enactment. *See* Airport and Airway Revenue Act, Pub. L. No. 91-258, 84 Stat. 219 (1970) ("1970 Act"). Through the 1970 Act, Congress deemed an excise tax on the sale of aviation fuel that had previously applied to both commercial and noncommercial aviation applicable to noncommercial aviation only. *Id.* At the time, "noncommercial aviation" was defined in the fuel tax statute, which is separate from Section 4261, as "any use of an aircraft, other than use in a business of transporting persons or property for compensation or hire by air."

7

26 U.S.C. § 4041(c)(4) (1970) (current version found at 26 U.S.C. § 4083(b) (2004) (now defining "commercial aviation" instead of "noncommercial aviation" as "any use of an aircraft in a business of transporting persons or property for compensation or hire by air")). Senate and House Reports on the 1970 Act provided that, "[i]n general," noncommercial aviation would be subject to fuel tax and commercial aviation would be subject to "tax[] on passenger and air freight transportation." S. REP. NO. 91-706, 1970 WL 123227 (1970); *see also* H.R. REP. NO. 91-601 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 3047, 3084.

Bombardier contends that supporting its argument is a 2012 amendment to Section 4261 providing a three-year reprieve from excise tax to fractional-aircraft-ownership programs. *See* FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95, 126 Stat. 11 (2012) (providing exemption from Section 4261 tax until September 30, 2015) ("2012 Act"). One congressman commented that the 2012 Act "reaffirm[ed] that fractional aviation is non-commercial aviation" and thus should not be "subject to the commercial ticket tax." 158 CONG. REC. H445-04, 2012 WL 339393 (daily ed. Feb. 3, 2012) (statement of Rep. Tiberi). Taking all of this history together, Bombardier deduces that Congress meant to restrict Section 4261 tax to fees collected by entities involved in commercial aviation only.

Bombardier asserts that the only circuit court opinion squarely addressing this issue to date supports application of the commercial aviation test. *See Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463 (Fed. Cir. 1997). In *Executive Jet*, the question was whether fees collected by a corporation operating an aircraft management program similar to Flexjet were "amount[s] paid for taxable transportation" under Section 4261. *Id.* at 1468–70. The lower court applied the possession, command, and control test, and held the fees to be taxable. *Executive Jet Aviation, Inc. v. United States*, No.

1:95-cv-00007-DGS, slip op. at 12–22 (Fed. Cl. Mar. 29, 1996).  The Federal Circuit affirmed but examined only whether the corporation was engaged in commercial or noncommercial aviation.  125 F.3d 1463.  Because of the extent of the corporation's services, the court said it was in the "business of transporting persons . . . for hire by air"; thus, the fees were subject to Section 4261 excise tax.  *Id.* at 1469.

In applying the test to its own operations, Bombardier posits that because the FAA, the "federal agency tasked with regulating air travel," has conclusively labeled Flexjet's services as noncommercial, the fees collected are not taxable under Section 4261.  Bombardier notes that its FAA license is noncommercial, that FAA regulations define "commercial" operations similarly to Section 4083(b) as transporting persons for "compensation or hire," and that the FAA has determined fractional-aircraft-ownership "management" to be distinct from traditional commercial air operations. *See, e.g.*, 14 C.F.R. § 119.33(a); Regulation of Fractional Aircraft Ownership Programs and On-Demand Operations, 68 Fed. Reg. 54520-01, 2003 WL 22134765 (Sept. 17, 2003).  As an example of this distinction, Bombardier points to the FAA's acknowledgment of obvious business-model differences between a commercial airline, where the airline — not its passengers — owns the aircraft, and Flexjet, where the traveling participants are the owners.  *See* 68 Fed. Reg. 54520-01, 2003 WL 22134765.

The district court, however, concluded that reliance on FAA regulations was misplaced.  Quoting another recent decision that considered the same argument, the district court said there is no authority supporting the contention that the way safety regulations categorize Bombardier's Flexjet operations "are 'controlling' or 'applicable' in a *tax dispute.*"  *See NetJets*, 80 F.

Supp. 3d at 755.[5]  The FAA and IRS apparently agree in this regard. *See* 68 Fed. Reg. 54520-01, 2003 WL 22134765 (FAA final rule on fractional-aircraft-ownership programs providing that "[t]ax law does not govern safety rules"); Rev. Rul. 78-75, 1978-1 C.B. 340, 1978 WL 42060 (IRS Revenue Ruling providing that "commercial" and "noncommercial" definitions in FAA regulations are "not consistent with" tax statutes).

Rejecting the commercial aviation test, the district court instead determined Bombardier's liability by applying the possession, command, and control test.  Developed through a series of Revenue Rulings, that test focuses on whether the taxed entity, rather than the entity being transported, has "possession, command, and control" of the means of transportation and charges for its services.  *See* IRS Tech. Adv. Mem. 2004-42-5048, 2004 WL 1369063 (June 18, 2004) ("2004 TAM") (summarizing pertinent Revenue Rulings); *Davis v. United States*, 495 U.S. 472, 484 (1990) (Revenue Rulings are given "considerable weight where they involve the contemporaneous construction of a statute and where they have been in long use.").  Stated another way, where a corporation or other entity merely acts as an aircraft owner's *agent* by

---

[5] In *NetJets*, corporations operating a successor to the aircraft management program in *Executive Jet* (NetJets) and a program offering similar services to owners of whole aircraft who allowed their aircraft to be used in a charter service for third-party customers (Executive Jet Management) claimed that neither model provided "taxable transportation" within the meaning of Section 4261.  80 F. Supp. 3d at 745–46.  The corporations argued that the commercial aviation test applied, and that FAA regulations deem the businesses noncommercial which is dispositive of Section 4261 tax liability.  *Id.* at 753–56, 761–64.

As to NetJets, the court concluded that it was collaterally estopped by *Executive Jet* from holding the program did not provide taxable transportation.  *Id.* at 753–54.  It allowed NetJets to avoid liability, though, as to the tax on the MMFs and Fuel Fees because a 1992 Technical Advice Memorandum issued to NetJets's predecessor was unclear about which fees were taxable; the IRS later conceded in negotiations with the corporation in *Executive Jet* that no tax was due on the MMFs or Fuel Fees.  *Id.* at 749–50.  As to Executive Jet Management, the court applied the possession, command, and control test, to determine that a factual dispute existed over whether the program provided taxable transportation within the meaning of Section 4261 precluding summary judgment.  *Id.* at 761–62.

providing limited operational and maintenance services, no tax is due. *See* IRS Tech. Adv. Mem. 2004-42-5048, 2004 WL 1369063. Where it acts as *principal* by providing a crew and insurance, and maintaining all operations and maintenance, among other services, it is providing taxable transportation under Section 4261. *See id.*

We agree that the possession, command, and control test is the proper framework under which to analyze an entity's Section 4261 tax liability. Bombardier's argument in support of the commercial aviation test fails for a number of reasons.

As an initial matter, the definition of "commercial aviation" in Section 4083(b), the current version of former Section 4041(c), explicitly applies only to the subpart of the Internal Revenue Code dealing with the specific fuel tax discussed in that subpart. *See* 26 U.S.C. § 4083(b). Section 4081(a)(2)(C) also makes clear that the fuel tax now applies to both commercial and noncommercial aviation, eroding Bombardier's argument that the fuel tax applies only to noncommercial aviation and Section 4261 tax applies only to commercial aviation.

Section 4261, moreover, has remained essentially unaltered since 1956.[6] *See* Pub. L. No. 84-796, ch. 725, 70 Stat. 644 (1956). Thus, a statement in a congressional report related to the 1970 Act does not persuade us that former Section 4041(c)'s definition of "noncommercial aviation" (or current Section 4083(b)'s definition of "commercial aviation") should suddenly be determinative of tax liability under Section 4261. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 185 (1994) ("[T]he interpretation given by one Congress . . . to an earlier statute is of little

---

[6] As the Government notes, it is largely the percentage of the tax assessed that has changed over time.

assistance in discerning the meaning of that statute."). Congress, moreover, merely provided in the report that "in general" commercial operations would be subject to Section 4261 tax. *See* S. REP. NO. 91-706, 1970 WL 123227. The IRS has clarified that tax liability under Section 4261, whether the entity taxed is categorized as commercial or noncommercial under former Section 4041(c), is determined "on a flight-by-flight basis." *See* Rev. Rul. 72-360, 1972-2 C.B. 542, 1972 WL 30747. Thus, even an entity categorized as "noncommercial" under the fuel tax statute may incur tax liability under Section 4261 for some flights. *See id.*

We earlier mentioned that a congressman commented that the 2012 Act "reaffirm[ed] that fractional aviation is non-commercial aviation" and should not be "subject to the commercial ticket tax." 158 CONG. REC. H445-04, 2012 WL 339393 (daily ed. Feb. 3, 2012) (statement of Rep. Tiberi). With respect, statements by individual legislators do not reliably reveal "what a majority of both Houses of Congress intended when they voted for the statute." *United States v. Ceballos-Torres*, 218 F.3d 409, 414 n.6 (5th Cir. 2000). Furthermore, a conference report on the amendment in the 2012 Act expressly provided that "[n]o inference is intended" that beyond the three-year reprieve, fractional-aircraft-ownership programs are not providing taxable transportation within the meaning of Section 4261. *See* H.R. REP. NO. 112-381 (2012), at 280 n.32.[7] We decline to draw the inference expressly prohibited by the report.

*Executive Jet* is also of little assistance to Bombardier. While it is unclear why the Federal Circuit declined to use the possession, command, and control test, the Government correctly notes that the appellate court did not hold that the lower court erred in its application of that framework. *See*

---

[7] This report is available at https://www.gpo.gov/fdsys/pkg/CRPT-112hrpt381/pdf/CRPT-112hrpt381.pdf.

*Executive Jet*, 125 F.3d 1463.  Regardless, the decision is not binding on this court.  It is notable, though, that the outcome in *Executive Jet* actually weakens Bombardier's position in that the Federal Circuit determined that an aircraft management program with services very similar to those provided by Bombardier was a commercial operation providing "taxable transportation" within the meaning of Section 4261.  *Id.* at 1469.

Additionally, we do not find merit in Bombardier's assertion that the series of Revenue Rulings the IRS has relied on to refine the possession, command, and control test are "patchwork[ed]" and inconsistent, and therefore entitled to no deference.  Revenue Rulings are the IRS's "official interpretation" of tax law "published for the . . . guidance of taxpayers."  26 C.F.R. § 601.601(d)(2)(i)(a).  Where Revenue Rulings "have been in long use," they are entitled to "considerable weight."  *Davis*, 495 U.S. at 484.

Because the law and its application to the real world is continually evolving, it is only natural that guidance in Revenue Rulings evolves too.  We find a consistent theme, though, in the IRS's guidance from the earliest Revenue Rulings grappling with this issue: where an entity is responsible for nearly every service and precondition necessary to transport persons in an aircraft, and it charges for those services, it is providing taxable transportation – even if the *bona fide* owner of the aircraft itself is the person traveling.  For example, one ruling provides that there is no taxable transportation where a management company operates an aircraft and keeps it in good repair, but the owner retains control over crew and pays operating expenses.  *See* Rev. Rul. 58-215, 1958-1 C.B. 439, 1958 WL 10832; *see also* Rev. Rul. 60-311, 1960-2 C.B. 341, 1960 WL 12965 (aircraft owner that leases to others but retains possession, command, and control of the aircraft is furnishing taxable transportation); Rev. Rul. 74-123, 1974 C.B. 318, 1974 WL 34732 (management company operating aircraft owned by federal government providing taxable

## No. 15-10468

transportation where its services are the same as when using its own aircraft). The district court did not err in applying the possession, command, and control test.

Having determined the proper framework for our analysis, we turn to its application. Bombardier argues that the evidence in the record shows that it is an "agent" for Flexjet participants because participants own the aircraft, decide when and where to fly, and sign an FAA-required acknowledgement that they are in operational control. Bombardier contends that it merely provides management services.

The Government, though, presented evidence showing that Flexjet contractual agreements provide a leasehold or ownership interest in the aircraft to Bombardier during all flights, and allow Bombardier to take immediate possession of the aircraft at the time of the fractional interest sale. Bombardier arranges for the aircraft to be used, operated, inspected, serviced, and tested, and provides other services, such as hangar space and weather and communications services. Costs incurred in providing these services are paid, with some minor exceptions, by Bombardier. Additionally, Bombardier makes all necessary arrangements for flights, maintains all FAA records, furnishes pilots and crewmembers, and obtains risk and liability insurance (with Bombardier and the participants as insureds). Revenue Rulings teach us that ownership is not the determinative factor. *See* Rev. Rul. 74-123, 1974 WL 34732.

Bombardier is in possession, command, and control of the means of transportation. Thus, it is required to submit Section 4261 tax on fees collected from Flexjet participants. The district court did not err in granting summary judgment for the Government.

14

No. 15-10468

### B.     MMFs as "Amount[s] Paid for Taxable Transportation"

Alternately, Bombardier posits that even if Variable Fees and Fuel Fees are subject to Section 4261 excise tax, MMFs (Monthly Management Fees) cannot be categorized as "amount[s] paid for taxable transportation." *See* 26 U.S.C. § 4261(a). Because the statute's plain language anticipates taxing fees for actual transportation, Bombardier contends that fees going toward fixed costs incurred whether or not an aircraft is used are not taxable. Bombardier points to an IRS concession prior to the *Executive Jet* litigation that MMFs are not taxable under Section 4261. *See NetJets*, 80 F. Supp. 3d at 749–50.

This argument fails. The MMFs must be paid in order for Flexjet participants to receive air transportation; therefore, the fees qualify as "amount[s] paid for taxable transportation." Case law from other circuits and IRS Revenue Rulings support this conclusion. *See generally, e.g.*, *Shell Oil Co. v. United States*, 607 F.2d 924, 926–27, 930 (Ct. Cl. 1979) (holding that monthly charges for fixed costs like insurance assessed by a helicopter-service company are taxable); Rev. Rul. 2006-52, 2006-2 C.B. 761, 2006 WL 2991235 (Section 4261 tax applies to an "airline's costs associated with selling tickets" because such fees are "generally necessary to the air transportation" provided.).

The IRS's concession in the *Executive Jet* litigation, moreover, occurred 20 years ago in a case that did not involve Bombardier. A Technical Advice Memorandum ("TAM") issued to and relied on by the corporation in *Executive Jet* provided that "amounts paid to [the corporation] by aircraft owners for air transportation" are taxable under Section 4261. IRS Tech. Adv. Mem. 93-14-002, 1992 WL 465951 (Apr. 9, 1993) ("1992 TAM"). The 1992 TAM did not, however, specify which fees are taxable. *Id.* It is unclear from *Executive Jet* and *NetJets* why the IRS later agreed that no tax was due on MMFs in *Executive Jet*, but we will not rely on that concession in the face of other relevant authority providing that MMFs are not excepted from tax. *See*

No. 15-10468

*NetJets*, 80 F. Supp. 3d at 749–50; *Executive Jet*, 125 F.3d at 1467.  The district court did not err in concluding that the fees collected by Bombardier, including the MMFs, are subject to Section 4261 excise tax.

## III.    *Duty of Clarity/Unfair Competitive Disadvantage Principle*

Bombardier next contends that, regardless of its liability for Section 4261 excise tax on the fees generally, the IRS is precluded by the "duty of clarity" and "unfair competitive disadvantage principle" from recovering unpaid tax on the MMFs and Fuel Fees collected during the relevant periods.

### A.    *Duty of Clarity*

Bombardier primarily relies on a Supreme Court case and two decisions interpreting that case to support its "duty of clarity" argument.[8]  The Supreme Court case involved an employer who reimbursed employees for lunch expenses while day-traveling on business.  *Central Ill. Pub. Serv. Co. v. United States*, 435 U.S. 21, 21–22 (1978).  The Government argued that the reimbursements constituted wages, thereby triggering the duty to withhold federal income tax.  *Id.* at 24–28.  The Supreme Court disagreed, emphasizing the difference between primary and secondary tax liability: because an employer is secondarily liable, its "obligation to withhold [must] be precise and not speculative."[9]  *Id.* at 29, 31–32.  During the tax year in question, the Court said, there was no regulation or ruling requiring withholding on lunch

---

[8] The phrase "duty of clarity" is not found in *Central Illinois*, and we have not used it in a tax context in any decision to date.  We adopt Bombardier's language here to avoid confusion.

[9] The Government argues on appeal that *Central Illinois* should be read narrowly to mean only that there is insufficient notice when "no taxpayer could have reasonably suspected that it would be obligated" to pay the tax.  This argument, however, was not presented to the district court; thus, it is waived.  *See AG Acceptance Corp. v. Veigel,* 564 F.3d 695, 700 (5th Cir. 2009).

reimbursements.  *Id.* at 32.  Thus, "it [was] hardly reasonable to require [the] employer to fill the gap on its own account."  *Id.*

Similarly in a Claims Court case, an employer argued that it had no "clear and precise" notice of its duty to withhold taxes from per diem allowances paid to workers.  *General Elevator Corp. v. United States*, 20 Cl. Ct. 345, 347, 352–53 (Cl. Ct. 1990).  The Government disagreed, citing as sufficient notice an indefinitely suspended Revenue Ruling unrelated to the employer's practices and two other "somewhat similar" rulings.  *Id.* at 353.  The Claims Court, finding in the employer's favor, said that a secondary tax collector "must have adequate notice [of] . . . what the IRS thinks the law is and therefore what actions" it must take.  *Id.* (quotation marks omitted) (citing *Central Illinois*, 435 U.S. at 31–32).  The court said the outdated and vaguely relevant Revenue Rulings created a "speculative gap" that made it unreasonable to hold the employer "to have received the degree of notice the law requires."  *Id.* at 354.

Most recently, the district court handling *NetJets* granted summary judgment in favor of one of the plaintiffs on duty-of-clarity grounds.  *See NetJets Large Aircraft, Inc. v. United States*, No. 2:11-cv-1023, 2015 WL 7784925 (S.D. Ohio Nov. 12, 2015).  The relevant plaintiff's business model differs from Bombardier in that it provided management services for wholly-owned aircraft who allowed their aircraft to be used in a charter service for third-party customers.  *Id.* at *1.  The court said that because no single Revenue Ruling sets forth the possession, command, and control test, and because the most factually relevant Revenue Ruling currently in effect provides that no tax is due, the IRS failed to provide that plaintiff with "precise and not speculative notice of [its] potential tax collection obligation under [Section] 4261."  *Id.* at *9–11 (citing Rev. Rul. 58-215, 1958 WL 10832).

Here, Bombardier contends that the IRS has taken conflicting positions about whether the MMFs collected by the fractional-aircraft-ownership

No. 15-10468

industry generally are taxable under Section 4261. This inconsistency, Bombardier argues, has created the kind of uncertainty not permitted by *Central Illinois* and *General Elevator*.

For example, Bombardier again points to the 1992 TAM at issue in *Executive Jet*, which provided that the fees collected by the corporation in that case were subject to Section 4261 tax. IRS Tech. Adv. Mem. 93-14-002, 1992 WL 465951. The 1992 TAM did not specify which fees collected by the corporation were taxable, though, and the IRS later told the corporation that it was not liable for unpaid tax on the MMFs. *See NetJets*, 80 F. Supp. 3d at 749–50. Bombardier also argues that the IRS has stated in a Revenue Ruling that entities providing certain aircraft management services are not subject to Section 4261 tax, which is at odds with other agency pronouncements. *See* Rev. Rul. 58-215, 1958 WL 10832. Finally, Bombardier contends that in guidance for examiners, the IRS admits that neither the Internal Revenue Code "nor any IRS published guidance specifically addresses" the taxability of fees collected by fractional-aircraft-ownership programs. *See* INTERNAL REVENUE SERV., AUDIT TECHNIQUE GUIDE: AIR TRANSPORTATION EXCISE TAX (2008).[10]

Bombardier also asserts that the IRS has been inconsistent in decisions and advice specific to its operations. In 1998, based upon the IRS's concession in *Executive Jet*, Bombardier filed a refund claim for Section 4261 tax paid by Jet Solutions, Bombardier's predecessor, on MMFs collected during tax periods in 1995 through 1997. The claim was initially denied, prompting a second

---

[10] Audit Technique Guides "help IRS examiners during audits by providing insight into issues and accounting methods unique to specific industries." The guide Bombardier cites was located at https://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Air-Transportation-Excise-Tax-ATG-Part-1#Fractional (last visited Apr. 14, 2016). The link on June 23, 2016 indicated that the IRS was "reviewing the content . . . and will make it available again as soon as possible."

audit of tax periods in 1998 through 2005 in which Bombardier had failed to collect and remit some of the tax. During the second audit, Bombardier and the IRS agreed to request technical advice to settle the issue of whether Bombardier owes Section 4261 tax on MMFs. *See* IRS Tech. Adv. Mem. 2004-42-5048, 2004 WL 1369063. The 2004 TAM issued by the IRS determined that Bombardier was liable because MMFs "paid . . . by aircraft owners are . . . amounts paid for taxable transportation under [Section] 4261." *Id.*

Bombardier argues, however, that the 2004 TAM was revoked by subsequent agreements reached in the 1995-1997 and 1998-2005 audits absolving it of liability for those tax years. Citing an IRS memorandum, Bombardier said the agreements were the result of an appeals officer's "legal conclusion that MMFs were not payments for taxable transportation." Thus, Bombardier contends that the complaint filed in *NetJets* years after the relevant tax periods was the first notice it received that MMFs may be taxable under Section 4261. When the IRS failed to give "contemporaneous 'precise and not speculative' notice" of its secondary liability, Bombardier argues the IRS breached its duty of clarity.

Granting summary judgment in the Government's favor, the district court concluded that the 2004 TAM sufficiently apprised Bombardier of "what the IRS thought the law was and therefore what actions [Bombardier] was required to take." *See General Elevator*, 20 Ct. Cl. at 353. We agree. The 2004 TAM was issued to Bombardier's predecessor at Bombardier's and the IRS's request, and the advice clearly explained that MMFs are taxable under Section 4261. IRS Tech. Adv. Mem. 2004-42-5048, 2004 WL 1369063. This distinguishes the 2004 TAM from the 1992 TAM at issue in *Executive Jet* and *NetJets*, which is not applicable to Bombardier, as the 1992 TAM was not clear about which fees were taxable. *Compare* IRS Tech. Adv. Mem. 2004-42-5048, 2004 WL 1369063 *with* IRS Tech. Adv. Mem. 93-14-002, 1992 WL 465951.

No. 15-10468

Bombardier's revocation argument also is unpersuasive. The district court found that the 2004 TAM was never nullified because the IRS communicated to Bombardier that the audit agreements were the result of the unfair competitive disadvantage principle. Bombardier is correct, though, that the IRS only mentioned the principle in the March 2007 letter finalizing the agreement on the 1998-2005 audit. Bombardier focuses on the March 2006 letter finalizing settlement related to the 1995-1997 audit. That letter did not mention the 2004 TAM, or cite the principle or any other reason why the IRS had agreed to forgo collecting tax for those years. When that letter was issued, Bombardier posits, the 2004 TAM was revoked.

The IRS, however, has provided that a TAM is applied:

> [U]ntil it is withdrawn or until the conclusion is modified or revoked by a final decision in favor of the taxpayer with respect to that issue, the enactment of legislation, the ratification of a tax treaty, a decision of the United States Supreme Court, or the issuance of temporary regulations, final regulations, a revenue ruling, or other statement published in the Internal Revenue Bulletin.

Rev. Proc. 2016-2, 2016-1 I.R.B. 102, 2016 WL 20934. A new TAM may also be requested to revoke earlier issued technical advice. *Id.* We glean from this that a "final decision" resulting in a TAM's revocation is in the form of an authoritative interpretation of tax law that applies to all taxpayers, like Supreme Court decisions or Revenue Rulings, or a definitive statement of the law that applies to a specific taxpayer requesting the information based on specific facts, like a Technical Advice Memorandum. *See id.* A settlement agreement brokered with the IRS Appeals Office reducing a taxpayer's liability as to certain tax periods is not enough to revoke a TAM. *See id.*

Here, Bombardier did not request a new TAM or Private Letter Ruling after the 2004 TAM was issued. Section 4261 was not amended in any relevant

20

way, the IRS's published interpretation of the law did not change, and no Supreme Court decision was rendered.  While a TAM is not precedential and does not bind us, *see* 26 U.S.C. § 6110(k)(3), it does bind the appeals officer and the taxpayer to whom it was issued, *see* 26 C.F.R. § 601.106(f)(9)(viii)(c) (effect of TAM).  If the advice rendered is unfavorable to the taxpayer, though, the Appeals Office may settle that particular issue as if the TAM never existed. *Id.* § 601.106(f)(9)(viii)(c).  Seemingly, that is exactly what occurred here.  After the 2004 TAM clarified Bombardier's tax responsibility, the Appeals Office exercised its discretion to settle the dispute over tax owed from 1995 to 2005 as if the advice had never been given.  Thus, it may have been reasonable for Bombardier to assume that it did not owe any tax in the periods to which the settlements related.  It was not reasonable, though, for Bombardier to assume that the settlements revoked the TAM, a definitive expression of the application of Section 4261 to its operations.  *Id.* § 601.105(b)(5)(viii).

As to the appeals officer's conclusions, the Government explained in oral argument that prior to the 2004 TAM's issuance, the officer "did in fact take the position that [MMFs] were not taxable."  After the 2004 TAM was issued, though, the Government posits that the officer's theory of non-liability shifted to the unfair competitive disadvantage principle.  Some deposition testimony from an appeals officer involved supports this recounting of events. Regardless, the opinion of an appeals officer as to Bombardier's liability during specific tax periods does not undermine the effect of the 2004 TAM.  *See* 26 C.F.R. § 601.105(b)(5)(viii); *see also Tucker v. Comm'r*, 135 T.C. 114, 163 (2010) (Appeals officers have "adjudicative powers to conduct hearings and to issue determinations to resolve those hearings" but do not "possess the power to make final decisions for the IRS.").

We also do not find that the IRS has been meaningfully inconsistent. The 1992 TAM related to *Executive Jet* applied only to the corporation to which

it was issued. A "taxpayer may not rely on a TAM issued . . . for another taxpayer." Rev. Proc. 2016-2, 2016 WL 20934. As previously discussed, the 1992 TAM is distinguishable because it did not specify which fees were taxable under Section 4261. IRS Tech. Adv. Mem. 93-14-002, 1992 WL 465951. The 2004 TAM is clear that the MMFs are subject to tax under that statute. IRS Tech. Adv. Mem. 2004-42-5048, 2004 WL 1369063.

The 1958 Revenue Ruling cited by Bombardier, moreover, involved individual aircraft owners that were in greater operational control of their wholly-owned aircrafts than Flexjet participants' control of the fractionally-owned aircrafts at issue here. *See* Rev. Rul. 58-215, 1958 WL 10832. Regardless, this situation is not akin to *Central Illinois* and *General Elevator*. As the district court said, Bombardier was not "expected . . . to divine its tax collection obligations from such sources as a revenue ruling that had been suspended indefinitely." Bombardier was provided notice of its responsibility in the 2004 TAM, which it requested to clarify its obligations.

Finally, a statement in the Audit Technique Guide, general guidance issued to examiners, is unpersuasive. The statement is correct that there was no published guidance, in the form of a Revenue Ruling or otherwise, that specifically addressed the Section 4261 taxability of MMFs collected by fractional-aircraft-ownership program operators. *See* AUDIT TECHNIQUE GUIDE: AIR TRANSPORTATION EXCISE TAX (2008). The issue here, though, is notice of a tax obligation, which the 2004 TAM provided to Bombardier. The district court correctly concluded that the summary judgment evidence supports a finding that Bombardier "was given notice of a precise and clear duty to collect" Section 4261 tax on the MMFs collected during the relevant periods. The IRS did not violate any duty of clarity it owed to Bombardier.

No. 15-10468

### B.    *Unfair Competitive Disadvantage Principle*

Bombardier also argues that the "unfair competitive disadvantage principle"[11] shields it from liability.  Bombardier cites a Court of Claims decision holding that the IRS abused its discretion in issuing conflicting rulings to competing taxpayers resulting in unequal tax treatment.  *International Business Machines Corp. v. United States*, 343 F.2d 914, 919 (Ct. Cl. 1965). IBM and its competitor requested private letter rulings at the same time about the taxability of computer equipment.  *Id.* at 916–17.  The IRS issued an unfavorable ruling to IBM and an erroneously favorable one to its competitor.  *Id.*  Later, the IRS prospectively revoked the competitor's ruling, which resulted in IBM paying more taxes over time.  *Id.*  The court allowed IBM to recover taxes paid during the period that the conflicting rulings were in effect.  *Id.* at 925.

Bombardier claims the IRS has been similarly inconsistent here, such as with an alleged IRS concession in litigation with competitor PlaneSense, Inc., related to tax on MMFs and Fuel Fees.  *See generally* Complaint, *PlaneSense, Inc. v. United States*, No. 1:11-CV-00136-PB (D.N.H. March 22, 2011), ECF No. 1.  It also cites *NetJets*, where a district court held that a Bombardier competitor was not responsible for Section 4261 excise tax on MMFs or Fuel Fees because, as an Executive Jet successor, it relied on the 1992 TAM and an IRS concession that MMFs and Fuel Fees are not taxable.  *See* 80 F. Supp. 3d at 749–50, 756–59.  Bombardier asserts that because NetJets holds a 75% market share, this outcome creates inequities within the industry.

We, however, have construed the equitable rule articulated in the 1965

---

[11] We have referred to this principle as the "duty of consistency" or "equality doctrine."  *See, e.g., Herrington v. C.I.R.*, 854 F.2d 755, 757 (5th Cir. 1988) (citing *Bull v. United States*, 295 U.S. 247 (1935)); *Western Co. of N. Am. v. United States*, 699 F.2d 264, 276–77 (5th Cir. 1983).  We again adopt Bombardier's language for clarity's sake.

Court of Claims *IBM* case narrowly.[12]  One example concerns an equipment manufacturer who pointed out that a different manufacturer had secured a private letter ruling exempting it from certain excise taxes.  *Western Co. of N. Am. v. United States*, 699 F.2d 264, 276 (5th Cir. 1983).  Citing *IBM*, the company claimed the ruling should apply to it out of fairness, in part because the ruling had been on behalf of a company that manufactured trailers and chassis used in conjunction with the taxpayer's own equipment.  *Id*.  We disagreed, as a claim of equal treatment required the company to seek its own ruling.  *Id*.  "It is not enough that a private ruling has been issued to one similarly situated."  *Id*.

Unlike in *IBM*, we are not faced with dueling IRS rulings issued to competitors at the same time based on identical facts.  The 1992 TAM, which applied only to the corporation in *Executive Jet*, was issued years before the tax periods relevant to this case.  The 1992 TAM concluded, moreover, that "amounts paid . . . by aircraft owners for air transportation" are taxable under Section 4261.  IRS Tech. Adv. Mem. 93-14-001, 1992 WL 465951.  It failed to specify which fees were taxable.  The IRS later agreed with Executive Jet that MMFs and Fuel Fees were excepted.  *See NetJets*, 80 F. Supp. 3d at 749–50.

Bombardier's reliance on *NetJets* is similarly misplaced.  The equitable principle at issue in *Western Company* and *IBM* requires consistency by the IRS.  In *NetJets*, as in this litigation, the Government has argued that fractional-aircraft-ownership program operators owe Section 4261 tax on all collected fees.  *See id*.  The IRS commenced an examination of the competitor corporations in *NetJets* around the same time it began auditing Bombardier.

---

[12] Even the Federal Circuit has interpreted *IBM* narrowly in subsequent decisions. *See Florida Power & Light Co. v. United States*, 375 F.3d 1119, 1124 (Fed. Cir. 2004) (explaining that *IBM* is "limited to its facts," and applies only when the plaintiff taxpayer also sought a private letter ruling that contradicts another taxpayer's private letter ruling).

*Id.* at 751.  Thus, the IRS has not treated NetJets more favorably than any other entity engaged in the fractional-aircraft-ownership industry.  It was the district court that ruled in NetJets's favor. *See id.* at 749–50.

As for *PlaneSense*, Bombardier directs us to one document in the record: a stipulation of dismissal of the case by the parties.  *See* Stipulation of Dismissal, *PlaneSense, Inc. v. United States*, No. 1:11-CV-00136-PB (D.N.H. July 26, 2013), ECF No. 25.  It is unclear why those parties agreed to dismiss their claims, but Bombardier posits the IRS conceded that no tax was due on MMFs or Fuel Fees under Section 4261.  The district court is correct that the scant evidence provided in relation to *PlaneSense* "would not permit a reasonable trier of fact to find that the IRS treated a similarly situated taxpayer more favorable than it treated [Bombardier] for the tax years in question."  The unfair competitive disadvantage principle has no application here.  We affirm summary judgment in the Government's favor.

## IV.    *Motion for Leave to Amend Complaint*

Finally, Bombardier argues that the district court erred in denying its motion to supplement the complaint with more facts related to the unfair competitive disadvantage principle.  Considering the late timing of the motion and that, as evidenced by our previous analysis, any amendment would be futile, the district court did not abuse its discretion in denying the motion.  *See* FED. R. CIV. P. 16(b)(4) (requiring a showing of "good cause and . . . the judge's consent" to amend after a scheduling order has been entered); *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003).

The district court decision is AFFIRMED.